**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald Milton ORAND, aka John Lee Bear, aka Johnny Lee Bear, Defendant-Appellant.**

No. 72-2064.

United States Court of Appeals, Ninth Circuit.

March 6, 1973.

Rehearing Denied May 14, 1973.

Certiorari Denied Nov. 5, 1973. See 94 S.Ct. 365.

T. Leonard O'Byrne (argued), of McMenamin, Jones, Joseph & Lang, Portland, Ore., for defendant-appellant.

D. Richard Hammersley, Asst. U. S. Atty. (argued), Sidney I. Lezak, U. S. Atty., Portland, Ore., for plaintiff-appellee.

Before HAMLIN and DUNIWAY, Circuit Judges, and WEIGEL,* District Judge.

WEIGEL, District Judge:

Appellant Donald Orand was indicted on two counts by a grand jury in the United States District Court for the District of Oregon. Count I charged him with the felonious taking of money and travelers checks (totaling $35,400) "by force, violence, and intimidation" from the Bank of St. Helens in Scappoose, Oregon on or about April 15, 1971, in violation of 18 U.S.C. §§ 2113(a), 2. Count II charged him with the knowing and wilful use of a firearm in the commission of the robbery, in violation of 18 U.S.C. §§ 924(c), 2.[1] Orand was found guilty by a jury on both counts. The court sentenced him to terms of fifteen years on Count I and ten years on Count II, the sentences to run concurrently.

Orand makes four claims of error. We have concluded that none should prevail and affirm the judgment.

Assessment of Orand's first—and major—contention requires a short summary of the facts. The prosecution's case consisted essentially of the testimony of bank witnesses, of police, and of accomplices Bonham and Golden. In sum, they testified that a team of four robbed the bank: Bonham, Golden, Oman, and

---

* Honorable Stanley A. Weigel, United States District Judge, Northern District of California, sitting by designation.

1. 18 U.S.C. § 2113(a) provides in pertinent part that anyone who takes or attempts to take, "by force and violence, or by intimidation," any money or other thing of value from a bank whose deposits are federally insured, or enters the bank with the intent to do so, is guilty of a felony.

18 U.S.C. § 2 provides in pertinent part that (a) whoever aids or abets in the commission of an offense against the United States is punishable as a principal, and that (b) whoever "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

18 U.S.C. § 924(c) makes it a felony to use a firearm (as defined in 18 U.S.C. § 921(a)(3)) to commit any felony punishable under federal law, or to carry a firearm during the commission of any felony punishable under federal law.

Orand.[2] Bonham and Golden positively identified Orand as a participant in the holdup. Each stated that Orand held a rifle at the bank entrance while they robbed the tellers' cages and Oman waited in the getaway car. Bonham and Golden also testified as to Orand's preparations for and participation in the robbery.[3] Orand testified, denying any role in the robbery, but admitting he knew it was going to take place.

During deliberations, the jury sent the trial judge a note reading: "Can the defendant be found guilty of participation by virtue of neglecting to alert authority when knowing of pending robbery?" The judge called the jury into court and expressed surprise, since he had previously given a precise instruction concerning participation.[4] He then stated that the answer to the jury's question was "No," and that Orand had not been charged with a failure to alert authority. The judge then explained:

"For instance, if you believe that he did not participate in the bank robbery itself, you have got to turn him out. But that means you believe the defendant as against the other witnesses. If you believe the other witnesses against the defendant, then you wouldn't come to this conclusion. You can't find the defendant guilty of a charge that wasn't made against him. He is being tried solely on the basis of the bank robbery."

Thereafter the following additional colloquy took place:

"THE COURT: Let me clarify this. I said whatever a man can do by himself he can do through others. In other words, you don't have to show that a defendant actually took the money himself. If he is in concert working with other people who are robbing the bank, then each one is responsible for the actions of the other people who were in the bank. He is being charged with bank robbery, not failure to stop a crime.

Is that clear now?"

"THE JUROR [Foreman]: Yes sir."

■ Then, after the jury had retired for further deliberations, defense counsel requested an *additional* instruction distinguishing between "aiding and abetting" or "participation" on the one hand, and "mere knowledge" of commission of a crime on the other. The judge denied this request. It is this denial which Orand claims to have been erroneous.

Orand argues that the judge, by his denial of the additional requested instruction, refused to cure evident confusion in the minds of the jurors (as displayed by their note). However, the record quoted above reveals precisely the contrary. Twice the judge had stated, in different ways, that a guilty verdict necessitated, *inter alia*, a finding that Orand participated "in the robbery itself", either by actually taking the money himself or by "working in concert" with others who were. Thus the judge adequately distinguished between actual participation in the crime and mere knowledge of its commission. He avoid-

---

2. The three accomplices had previously pled guilty and been sentenced.

3. The testimony of accomplices Bonham and Golden *was* corroborated by other prosecution witnesses, thus distinguishing this case from United States v. Hibler, 463 F.2d 455, 458–459 (9th Cir. 1972), cited by appellant in his "Additional Authorities."

4. The judge's first instruction on this point stated in pertinent part:

"In order to find the defendant guilty, it is not necessary for the Government to prove that the defendant personally did every act constituting the offense charged because:

Whoever commits an offense against the United States or willfully aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Therefore, every person who willfully participates in the commission of a felony may be found to be guilty of that offense. Participation is willful if done voluntarily and purposely and with specific intent to do some act the law forbids; that is to say, with bad purpose to disobey the law."

**1176**

ed the problems of using elaborate hypotheticals to explain the distinction (*cf.* United States v. Garguilo, 310 F.2d 249, 254 (2d Cir. 1962)). Moreover, we are not at liberty to doubt the jury foreman's reply, to the effect that the applicable law was clear as a result of the court's explanation. Any additional instruction would have been superfluous and indeed might have led the jury back into confusion.

 Orand's second claim of error is that the court should not have admitted into evidence an invalid driver's license found in his possession. The license was apparently a counterfeit version of a Maryland license and was one of many circulating in that state. The potential relevance of this item to the trial was that some of the travelers checks stolen from the bank were cashed by means of one of these invalid Maryland licenses— although not the same one as the license found in Orand's possession. Because of this difference, Orand claims that the license found on him was irrelevant to the trial and that its admission prejudiced him unduly. The question of relevance is a close one; however, even assuming, *arguendo*, that the admission of the license constituted error, such error was harmless in the light of the entire record. Fed.R.Crim.P., Rule 52(a). There was ample independent evidence to support the verdict.

Third, Orand claims that prejudicial publicity during the trial required the judge to grant a mistrial motion under the due process reasoning of Sheppard v. Maxwell, 384 U.S. 333, 362, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). The publicity was an article published after the first day of trial in the one Portland evening newspaper. It stated that Orand "had entered a plea of guilty but later changed it to innocent." The judge read the article himself the morning of the second trial day. He then polled the jurors, who all answered that they had *not* read any such report. Moreover, the jury was closely guarded during recesses. Since none of the jurors read the article or knew its contents prior to verdict, there could be no prejudice to Orand resulting from it.

Orand's fourth contention is that his counsel's questioning of a defense witness was improperly cut short by the court. The effect, it is said, was to deny Orand the right to have the jury "perform its function as finders of fact." The defense witness referred to was called to impeach a prosecution witness. The record shows that defense counsel was improperly trying to elicit the impeachment by the use of leading questions. The judge had ample discretion to intervene.

Judgment affirmed.