FEDERAL TRADE COMMISSION,
Plaintiff–Appellee,

v.

AMERICAN NATIONAL CELLULAR,
et al., Defendants,

and

Michael G. Godfree,
Defendant–Appellant.

No. 86–6664.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 4, 1988.

Decided Feb. 13, 1989.

Michael G. Godfree, Los Angeles, Cal., pro se.

David C. Shonka, F.T.C., Washington, D.C., for plaintiff-appellee.

Before TANG, FLETCHER and PREGERSON, Circuit Judges.

FLETCHER, Circuit Judge.

The central question in this case is whether *Young v. United States ex rel Vuitton et fils, S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), which forbids appointing private counsel for interested parties in an underlying civil action as the special prosecutors for criminal contempt, applies to the appointment of attorneys employed by an independent agency such as the FTC to prosecute criminal contempt actions arising out of an underlying suit brought by their agency.

Michael Godfree, the defendant in a civil enforcement action brought by the Federal Trade Commission (FTC), appeals pro se his criminal contempt conviction for violating a temporary restraining order. Godfree challenges 1) the district court's authority to appoint attorneys from the FTC as special prosecutors of the contempt action; 2) the court's improper reliance on evidence from separate civil proceedings; 3) the adequacy of proof of willful intent to violate the TRO. We affirm. The appointment of special prosecutors in this case does not violate the principles of fairness enunciated in *Vuitton*. Any errors in evidentiary rulings were harmless. Godfree's separation-of-powers challenge to the FTC's authority to enforce laws of the executive branch is not properly before the court.

## FACTS

Godfree was the owner of American National Cellular (ANC), a cellular telephone services company. On November 12, 1985 the FTC brought a civil action in federal district court against Godfree, ANC, and several other defendants, charging them with deceptive practices under 15 U.S.C. §§ 45(a) and 53(b). *See FTC v. American Nat'l Cellular, Inc.*, 810 F.2d 1511, 1512 (9th Cir.1987). The complaint charged the defendants with making misrepresentations to consumers regarding the sale of services for preparing and filing applications for a lottery, operated by the Federal Communications Commission, of licenses to operate cellular telephone systems. The district court issued a temporary restraining order (TRO) freezing the defendants' assets, but permitting Godfree to withdraw $1000 per week for living expenses.

On June 24, 1986 FTC attorneys sought from the district court an order to show cause why Godfree should not be held in criminal contempt in violation of 18 U.S.C. § 401(3) for violating the TRO. The application alleged that Godfree "did transfer, disburse, dissipate, convert or withdraw" frozen assets, approximately $28,000 of which cannot be recovered.[1] The court issued the order; it also granted the FTC's attorneys' request to be appointed as spe-

---

1. More specifically, the application alleged that Godfree had withdrawn $110,000 from a frozen account on the same day he received, and after he had read, the TRO. Godfree was also alleged to have made several other withdrawals from that same account, and to have charged over $13,000 to a Visa credit card that was actually a "debit card", which debited an account that was covered by the TRO for each charge.

cial prosecutors for the contempt action. After a two-day hearing the district court found Godfree guilty of criminal contempt. It sentenced him to six months incarceration (commuted to five years probation), restitution of $28,274.65 of funds improperly removed from his accounts, 500 hours of community service, and certain requirements for disclosure of his business dealings and records. Godfree timely appealed. The underlying civil action was settled as to all but one defendant by the filing of a Consent Decree and Permanent Injunction within days of this appeal. Thereafter the district court granted a preliminary injunction against the remaining defendant and appointed a receiver. We affirmed. *FTC v. American National Cellular,* 810 F.2d 1511 (9th Cir.1987).

## DISCUSSION

On appeal Godfree argues (1) that the FTC's enforcement authority is unconstitutional because it entails execution of the laws by an independent agency; (2) that appointment of the FTC to prosecute the contempt action is prohibited by *Vuitton;* (3) that the evidence does not support a criminal contempt conviction; (4) that certain evidence was improperly considered; (5) that his right to a fair trial and sentencing was violated by the district court's conclusions regarding his culpability in the underlying civil action. We consider each issue in turn.

## I. SEPARATION OF POWERS CHALLENGE TO THE CONSTITUTIONALITY OF THE FTC'S ENFORCEMENT AUTHORITY

Godfree argues that both his underlying civil suit and this contempt action "represent an unconstitutional attempt by the FTC to usurp the constitutional powers

**2.** Article II, § 1 states that "[t]he executive Power shall be vested in a President of the United States of America." Article II, § 3 states that the President "... shall take Care that the Laws be faithfully executed ..."

**3.** "... [A]n unconstitutional statute is an absolute nullity and may not form the basis of any legal right or legal proceedings, yet until its unconstitutionality has been judicially declared

granted to the Executive by Section 1, Article II of the Constitution."[2] Appellant's Br. at 2. His contention is that Congress may not assign any authority for execution of the laws, an executive branch function, to the FTC, an independent agency. Thus, Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), which authorizes the FTC to seek injunctions and TROs against entities it believes are violating FTC-enforced laws, is unconstitutional.

■ We agree with the FTC that we may not review the constitutionality of the Commission's role in the issuance of this TRO. *Walker et al. v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed. 2d 1210 (1967). *Walker* holds that a person charged with contempt for violating a court order or decree may not, upon appealing the contempt conviction, challenge the constitutional validity of that order, unless there has been a judicial declaration of its unconstitutionality in an unrelated proceeding.[3] 388 U.S. at 320, 87 S.Ct. at 1831. There is an exception, not relevant here, for orders that are "transparently invalid" or have "only a frivolous pretense to validity." *Id.* at 315, 87 S.Ct. at 1829. To challenge on appeal the FTC's authority to seek the TRO, Godfree needed to raise a judicial challenge to the TRO's constitutionality by direct appeal of the order, not in his appeal from the contempt conviction. *Id.; see also In re Providence Journal Company,* 820 F.2d 1342, 1346 (1st Cir. 1986) (party must abide by court order or risk contempt, even if order is later declared unconstitutional, until order is vacated or modified).

■ Even if Godfree had timely challenged the TRO, we would be bound by *FTC v. American Nat'l Cellular, Inc.,* 810 F.2d 1511 (9th Cir.1987), to uphold the

in appropriate proceedings, no person charged with its observance under an order or decree may disregard or violate the order or the decree with immunity from a charge of contempt of court; and he may not raise the question of its unconstitutionality in collateral proceedings on appeal from a judgment of conviction for contempt of the order or decree ..." 388 U.S. at 320, 87 S.Ct. at 1831.

Commission's constitutional authority to bring the action. In that case, Godfree and his codefendants had raised the issue as one of their defenses. The district court ruled against the one defendant who did not settle, and we affirmed. We held that FTC commissioners were sufficiently subject to control by the President to allow them to engage in the enforcement of federal law, relying upon *Humphrey's Executor v. United States*, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935), as reinvigorated by *Bowsher v. Synar*, 478 U.S. 714, 720, 106 S.Ct. 3181, 3185, 92 L.Ed.2d 583 (1986). *Id.* at 1513–14. In *Humphrey's Executor* the Supreme Court upheld the FTC's constitutionality, despite the limitations on the President's power to remove commissioners and despite the extent of its exercise of powers. Our reliance on *Humphrey's Executor* has been buttressed by the Supreme Court's recent decision in *Morrison v. Olson*, ─── U.S. ───, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), in which the Court predicated its finding that the independent counsel statutes are constitutional in part on *Humphrey's Executor*. *Id.* at 2616–20; *see also id.* at 2618 n. 28 ("[I]t is hard to dispute that the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered "executive," at least to some degree."). *See also SEC v. Blinder, Robinson & Co.*, 855 F.2d 677 (10th Cir.1988) (finding civil enforcement power given to SEC constitutionally valid, based on *Humphrey's Executor* and *Morrison*).

## II. LIMITATIONS ON THE COURT'S AUTHORITY TO APPOINT AGENCY ATTORNEYS AS SPECIAL PROSECUTORS IN CRIMINAL CONTEMPT ACTIONS

The Supreme Court in *Vuitton*, 107 S.Ct. 2124, 2135, held that counsel for interested private parties may not be appointed as special prosecutors in criminal contempt actions. Apparently no court has yet addressed what effect, if any, *Vuitton* has on the court's capacity to appoint federal agency attorneys to prosecute such actions.

In *Vuitton*, the Court found that selection of a prosecutor must be informed by the importance of impartiality, public confidence in the judicial process, and the need to avoid even the appearance of impropriety. *Id.* at 2135–37. It accordingly held that a court first must ask the U.S. Attorney to prosecute a contempt action before it appoints a substitute, and that the private attorney it appoints in the U.S. Attorney's stead must not represent a party interested in the proceeding: "counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a contempt action alleging a violation of that order." *Id.* at 2138. A plurality of the Court reasoned that the fairness considerations implicated by an improper appointment were so great as to make "harmless error" analysis inapplicable. *Id.* at 2138–39.[4]

Godfree argues that *Vuitton* compels reversal of his contempt conviction. He contends that the FTC attorneys appointed as special prosecutors were counsel for an interested party rather than disinterested prosecutors; therefore, their appointment was a "fundamental and pervasive error." Appellant's Brief at 5. Under his analysis, the court must first invite the U.S. Attorney to prosecute the contempt; if the U.S. Attorney declines, the court may not appoint FTC attorneys because the FTC is the beneficiary of the underlying civil action.

The FTC counters that *Vuitton* is totally inapposite. According to the FTC, "[t]he Commission and its attorneys are not like private litigants. Whether prosecuting a civil law enforcement action or prosecuting a contemnor for criminally violating a lawful court order, the Commission and its attorneys have a single object—to serve the public interest. The inherent conflict of interest that the Supreme Court found intolerable in [*Vuitton*] simply does not exist when attorneys for the federal government act to enforce the laws." Appellee's Brief at 27–31.

We agree with the FTC to the extent that we do not find *Vuitton* controlling in this case. Godfree's argument that the

---

**4.** Section III. B., Brennan, J., joined by Mar-   shall, Blackmun, and Stevens, JJ.

FTC, an independent agency, is the equivalent of a private party rather than part of the executive branch fails under *FTC v. American National Cellular*, 810 F.2d 1511; *Humphrey's Executor*, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611, and *Morrison v. Olsen*, —— U.S. ——, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988). *See* Section I, *supra.* The *Vuitton* opinion focused quite narrowly on the conflicts of interest faced by private attorneys trying to represent simultaneously both their private clients' interests and the public interest in prosecuting contemnors. Specifically, the Court in *Vuitton* appears largely to have been concerned with conflicting *financial* interests. 107 S.Ct. at 2135–36 (contrasting private attorneys with disinterested U.S. Attorneys, who, like all government employees, are prohibited by 18 U.S.C. § 208(a) from participating officially in matters in which they have a financial interest). We doubt the Supreme Court intended *Vuitton* to disqualify automatically any FTC attorney as "interested" simply by virtue of employment with the agency that brought the underlying suit.

However, although *Vuitton* is not controlling, it does have a bearing on this case. The Court in *Vuitton* stressed that a prosecutor seeking a contempt conviction must be both impartial in fact and appear to be so. The avoidance of impropriety, the court explained, is necessary to maintain public confidence. Although we reject a *per se* bar to the participation of government lawyers in contempt prosecutions, we recognize that under certain circumstances a government attorney may lack the impartiality and appearance of impartiality that our system of justice demands of its prosecutors.

The FTC would have us believe that government attorneys are basically fungible, united in their vision of the public interest, such that no conflicts of interest, or intolerable appearances of such conflicts, could arise. It is not obvious, however, that the "public interest" would always dictate one course over another. Casting government attorneys into adversarial roles in civil litigation results in vigorous advocacy for their client, the United States Government. Such vigor may cloud the attorneys' ability to distinguish between contempt prosecutions that further their purported primary objective—compliance with the court's order—and those that are driven by a primary motive to further the goals of the underlying litigation. For example, government attorneys may be tempted to pursue a nonmeritorious contempt prosecution because the prosecution would allow them to obtain documents or access to information useful in the underlying civil litigation. They may also be tempted to abandon, press or compromise a prosecution wholly apart from its merits to leverage settlement in the underlying litigation. If their perspective is colored by involvement with the underlying civil action, then they more closely resemble the "interested parties" in *Vuitton* than impartial U.S. Attorneys.

The Supreme Court, in *United States v. Sells Engineering Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1982), highlighted these possibilities. It barred government attorneys from obtaining automatic disclosure of grand jury materials for use in civil proceedings because, in part, of the potential for abuse of the grand jury process:

> [B]ecause the Government takes an active part in the activities of the grand jury, disclosure to Government attorneys for civil use poses a significant threat to the integrity of the grand jury itself. If prosecutors in a given case knew that their colleagues would be free to use the materials generated by the grand jury for a civil case, they might be tempted to manipulate the grand jury's powerful investigative tools to root out additional evidence useful in the civil suit, or even to start or continue a grand jury inquiry where no criminal prosecution seemed likely. Any such use of grand jury proceedings to elicit evidence for use in a civil case is improper *per se*.... We do not mean to impugn the professional characters of Justice Department lawyers in general; ... Our concern is based less on any belief that grand jury misuse is in fact widespread than on our

concern that, if and when it does occur, it would often be very difficult to detect and prove.

*Id.* at 432, 103 S.Ct. at 3142 (citation omitted).

■ Two factors are relevant in deciding whether government attorneys' participation as special prosecutors in a particular case compromises the principles of *Vuitton.* First, the involvement of the U.S. Attorney's office is relevant. The prospect of interested decisionmaking and of the appearance of impropriety is substantially lessened where the U.S. Attorney retains control of the prosecution in which the agency attorneys participate. For example, the U.S. Attorney may accept responsibility for the prosecution of the contempt, but designate agency attorneys as Special Assistant U.S. Attorneys to assist him. *Compare United States v. Reece,* 614 F.2d 1259, 1263 (10th Cir.1980) (finding no basis for reversal where an agency attorney merely assisted the U.S. Attorney in grand jury proceedings). Second, the extent of the particular agency attorneys' involvement in the underlying civil litigation obviously is relevant in assessing the propriety of their participation as special prosecutors. In this case both factors lead us to conclude that the appointment of the FTC attorneys was proper.

The appointment of the FTC attorneys as special prosecutors did not compromise the principles of prosecutorial impartiality and the appearance of propriety. Before bringing the request for an Order to Show Cause, the FTC consulted the U.S. Attorney's Office, which concurred in the appointment of the FTC counsel. The U.S. Attorney's office also entered an appearance at the October 8, 1986 hearing. Thus the U.S. Attorney's role was not significantly different from what it would have been had the U.S. Attorney been the prosecutor in name, and had FTC attorneys been appointed as Special Assistant U.S. Attorneys. Furthermore, the degree of participation in the contempt proceedings of FTC attorneys who handled the civil proceedings was not great. The FTC attorneys most involved in the contempt prosecution do not appear to have been involved in the underlying civil suit. George Schulman, who figured prominently among the attorneys litigating the civil action, was not a special prosecutor in the contempt case. He appeared only in the capacity of a witness. Such a role, in contrast to that of one controlling the prosecution, corresponds to the role *Vuitton* approved for interested private counsel. 107 S.Ct. at 2137 n. 17.

Since we find that the appointment of the FTC attorneys as special prosecutors was not error in this case, we need not decide whether harmless error analysis is normally appropriate in cases where appointments have been improper. Nor do we need to decide what effect, if any, Godfree's failure to object to the appointments below would have on review here. *Compare United States v. Heldt,* 668 F.2d 1238 (D.C.Cir. 1981) (defendant who failed to move to disqualify prosecutors on ground of conflict of interest, yet asserted a denial of due process on appeal, must prove actual prejudice to obtain reversal).

### III. THE CRIMINAL CONTEMPT CONVICTION

The district court convicted Godfree of criminal contempt of court under 18 U.S.C. § 401(3)[5] for violating the TRO. Finding no error in the appointment of FTC attorneys as special prosecutors in this case, we proceed to review the conviction itself. This court will affirm a conviction for criminal contempt if, upon reviewing the record and viewing the evidence in the light most favorable to sustaining the conviction, it finds that the trier of fact "could rationally conclude from the evidence presented that guilt was established beyond a reasonable

---

**5.** Section 401(3) provides:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

... (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

doubt." *In re Kirk,* 641 F.2d 684, 687 (9th Cir.1981).

The criminal contempt power enables judges to fine or imprison persons who willfully violate court orders. Intent is an essential element that must be proved beyond a reasonable doubt. *Id.* Godfree concedes that the court entered an order, that he knew of the order, and that he violated the terms of the order. However, he vigorously contests the district court's finding that he *willfully* violated the TRO. Godfree also alleges two evidentiary errors by the district court: (1) its consideration of the Godfree Affidavit of November 19, 1985; and (2) its consideration of the Arizona Deposition of April 1986. We address the evidentiary errors first.

*The Affidavit.* The affidavit was introduced to impeach Godfree. It shows that on November 19, 1985, Godfree complained that the TRO was overbroad in freezing the assets of companies other than ANC. Yet on November 22 and November 25 he withdrew funds from Sterling Assets accounts, and in testimony before the district court on October 8, 1986 he alleged that he was not aware the TRO restrained his use of Sterling Assets.

■ Consideration of the affidavit as a party admission and a prior inconsistent statement was not error. It was a document Godfree provided to the FTC in the course of discovery in the underlying civil action, so his defense was not hindered by surprise. Further, when the FTC produced the affidavit, the court recessed to give Godfree's counsel opportunity to review and discuss it. Godfree's subsequent failure to seek a continuance or object that the government's untimely disclosure of the affidavit would prejudice his defense strategy precludes our reviewing such contentions here. *United States v. Tamura,* 694 F.2d 591 (9th Cir.1982); *United States v. Espericueta—Reyes,* 631 F.2d 616, 623–24 (9th Cir.1980).

■ *The Deposition.* The district court erred in relying on an answer Godfree purportedly gave in a deposition taken by the State of Arizona in connection with a separate proceeding. In that deposition, God-

free acknowledged withdrawing funds from certain accounts and, in response to the question "And you knew at the time when you did that that those accounts were supposed to be frozen and no checks were to be written on the account or withdrawals made?", he is recorded as having answered, "I did." RT 87:18–88:25 (October 8, 1986).

Godfree's counsel objected that no proper foundation had been laid for the partial transcript, since it may never have been presented to Godfree for correction and signature. The court seemed to agree, but then admitted the deposition after the following exchange with Godfree:

THE COURT: "I guess one thing we should know is are you saying that that was—that you did not give that answer or that the court reporter didn't transcribe your answer correctly or that you want to change that answer because it is wrong even though you might have given it? Which one of those?"

GODFREE: "The later. If that indeed was the question as transcribed then I misunderstood the question, your Honor."

RT 94:9–17 (October 8, 1986). Godfree's speculative answer should not have been taken as an admission that the transcript accurately reflected what was asked and answered. If Godfree never reviewed the transcript for errors, then the court was wrong to assume he had so answered in the deposition, and wrong to rely on the supposed admission of knowledge as a basis for finding intent on Godfree's part to violate the TRO. The record is ambiguous as to exactly what reliance the court placed on the deposition's contents. The court apparently was skeptical as to the veracity of Godfree's answer to the court's question to the effect that the deposition answer was wrong, but may have believed that Godfree did not intend to answer the deposition question as he did.

■ *Harmless Error Analysis.* Even if we were to assume that the district court improperly relied upon the Arizona deposition, the conviction need not be reversed if

the error was harmless. We will find harmless error where ample evidence supports the conviction after the improper evidence is disregarded and we are convinced it did not affect the court's decision. *See United States v. Orand*, 491 F.2d 1173, 1176 (9th Cir.1973). It is apparent from a review of the court's oral decision that it was persuaded that the withdrawal of $110,000 by Godfree on the same day he was served with the TRO was no coincidence. The court clearly was persuaded that Godfree in light of his legal training knew that the TRO restricted the subject transactions or, at best, that Godfree refrained from determining exactly what transactions were restricted by the TRO because he thought ignorance of its exact contents and meaning could excuse his conduct. There was ample testimony from which the court could infer knowledge and intent and it did so. We are persuaded the court would have reached the same result and justifiably so.

## IV. SENTENCING

Godfree contends that his right to a fair trial was compromised and the sentence unfairly influenced by the district court's improper reliance on Godfree's culpability in causing losses to numerous fraud victims in the underlying civil action. Godfree particularly points to the judge's statement "I'm satisfied there are victims and you'll never be able to satisfy me to the contrary, not after I've seen what I've seen in this case—not in this criminal proceeding but in the civil matters ..." RT 13:1-6 (Nov. 10, 1986). A district court's consideration of information outside the record of conviction for sentencing purposes is reviewed for an abuse of discretion. *United States v. Larios*, 640 F.2d 938, 942 (9th Cir.1981). We will find an abuse of discretion if the defendant shows that the district court relied on materially false or unreliable information. *United States v. Messer*, 785 F.2d 832, 834 (9th Cir.1986).

■ The FTC argues that the district court's reliance on information from the civil proceeding in determining Godfree's sentence was proper. We agree, given the breadth of discretion we accord sentencing judges in considering outside information. In *Serapo v. United States*, 595 F.2d 3, 4 (9th Cir.1979), we noted that "[a] sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited as to the kind of information which he may consider or the source from which it may come." While settlement of the underlying civil action before appeal leaves unanswered the question of Godfree's liability, Godfree has not shown that the district judge's conclusions in that regard are materially false, or that the sentence is disproportionately harsh as a result. We also note that Godfree's counsel did have an opportunity to respond to the judge's statements.

One aspect of the sentence remains to be considered. The district court's sentence included, in part, a requirement that Godfree pay $28,274.65 restitution to the Court Appointed Receiver handling the civil proceeding, the payment to be made "to the Department of Justice through the Office of the U.S. Attorney in a manner to be directed by the U.S. Probation Office."

■ Criminal contempt proceedings "are not intended to punish conduct proscribed as harmful by the general criminal laws. Rather, they are designed to serve the limited purpose of vindicating the authority of the court." *Vuitton*, 107 S.Ct. at 2133. Sentences for criminal contempt are not, therefore, the appropriate vehicle for enhancement of the plaintiff's recovery in the underlying civil action. Here, however, ordering restitution of the funds Godfree wrongfully withdrew from frozen accounts was justified to restore the status quo and to preserve assets to pay any adverse judgment in the underlying action.

## CONCLUSION

The district court's appointment of FTC attorneys as special prosecutors was not reversible error under the principles of *Young v. United States ex rel. Vuitton et fils, S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). While *Vuitton* does not explicitly extend its holding to contempt convictions prosecuted by govern-

ment attorneys, we are persuaded that *Vuitton*'s driving concerns are nevertheless relevant to such proceedings. When examined with *Vuitton* in mind, the facts before us reveal no reversible error. The U.S. Attorney was given the opportunity to participate in the prosecution, and the FTC made a good faith attempt to prosecute the contempt with attorneys who were not closely associated with the civil action.

The court's finding of willful intent to violate the TRO is supported by substantial evidence. Any possible erroneous evidentiary rulings, were harmless. The sentence was proper.

The judgment of the district court is AFFIRMED.