907 F.2d 484
 Fed. Sec. L. Rep. P 95,411
UNITED STATES of America, ex rel., SECURITIES & EXCHANGE
COMMISSION, Plaintiff-Appellee,
v.
George R. CARTER, Douglas Litchfield, and Walter R. Mooney,
Defendants-Appellants.
 No. 89-1547.
 United States Court of Appeals,
Fifth Circuit.
 July 18, 1990.
 
 George R. Carter, Las Vegas, Nev., pro se.
 Peter R. Thompson, Stollenwerck, Moore & Silverberg, Dallas, Tex., for Litchfield.
 David E. Jones, Demarest & Smith, Dallas, Tex. (Court-appointed), for Mooney.
 Faith D. Ruderfer, Atty., S.E.C., Washington, D.C., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.
 Appeals from the United States District Court for the Northern District of Texas.
 Before GOLDBERG, GEE and WILLIAMS, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge:
 
 
 1
 George Carter, Walter Mooney, and Douglas Litchfield were convicted of criminal contempt of court under 18 U.S.C. Sec. 401(3). They appeal, claiming that the injunctions they did not obey were ambiguous and that their violations of the injunctions were not willful. We do not reach these claims, because we reverse on a critical issue that we raise sua sponte. We hold that the district court erred in appointing as special prosecutors in the contempt action the Securities and Exchange Commission attorneys. Not only was the SEC the named plaintiff in the original action, its attorneys in that action served as the special prosecutors representing the SEC pursuant to the court appointment.
 
 I.
 
 2
 On February 23, 1988, the SEC filed a civil action for injunctive relief in federal district court in Dallas against seven individual and four corporate defendants. The defendants included Orex, Inc., Chemex, Inc., and appellant Litchfield. The SEC alleged that the defendants violated anti-fraud and registration provisions of the federal securities laws by selling unregistered securities in the form of investment contracts for interests in purported gold-bearing ore. After a hearing, the district court granted the SEC's request for preliminary injunctive relief. The court appointed a receiver for Orex on March 23, 1988, and for Chemex on April 8, 1988. The receivership orders enjoined "all persons ... from in any way disturbing the possessions of the Receiver and from prosecuting any actions which involve the Receiver or which affect the property of [the defendant corporations] except in this Court." The district court authorized the receiver to sell Orex' and Chemex' assets. The sale was scheduled to be confirmed by the court on November 10, 1988.
 
 
 3
 Near the end of October, 1988, appellant Mooney, a former employee to whom Orex owed approximately $2000 in back wages, contacted appellant Carter, a Nevada attorney, to inquire about forcing Orex into bankruptcy. Carter told Mooney that involuntary bankruptcy proceedings could be filed only if several creditors whose claims totalled more than $5000 were recruited to join in the bankruptcy petition. Mooney then contacted Orex creditors to obtain information about Orex' outstanding debts. Litchfield also was involved in the efforts to force Orex and Chemex into bankruptcy. Among other actions, Litchfield provided the federal tax I.D. numbers for the corporations to the group that was preparing to file the involuntary bankruptcy petitions. Litchfield also referred Fred Jurash, a Chemex creditor, to Carter.
 
 
 4
 On November 9, 1988, Carter prepared involuntary bankruptcy petitions for Orex and Chemex. Jurash verified the Chemex petition. Mooney verified the Orex petition. At approximately 4:00 p.m. on November 9, Carter filed the petitions in the United States Bankruptcy Court for the District of Nevada, Las Vegas Division. It is undisputed that appellants each had read the Dallas court's injunctions before these petitions were filed. On the morning of November 10, 1988, Carter called the Dallas court to notify it of the bankruptcy filings and of the bankruptcy court's stay orders. The district court, however, disregarded the stays and confirmed the sale of the Orex and Chemex assets.
 
 
 5
 On November 14, 1988, the SEC filed a motion in the district court seeking to have Carter and the creditors named in the bankruptcy petitions held in civil contempt of court for violating the court's receivership injunctions. The district court issued orders directing the creditors and Carter to appear and to show cause why they should not be held in contempt. After a civil contempt hearing, the court ruled that the bankruptcy filings in Nevada were "void" and that civil contempt penalties against Carter and the creditors "would be of no real effect."
 
 
 6
 On December 22, 1988, the district court appointed the SEC to serve as special prosecutor to investigate this episode and to recommend the institution of criminal contempt proceedings, if any such proceedings were appropriate. On February 10, 1989, the SEC attorneys who originally had filed the civil suit and who now were serving as the special prosecutors on behalf of the SEC recommended that the district court charge appellants with criminal contempt. The district court notified appellants that they were accused of willfully violating and aiding and abetting violations of the court's receivership injunction orders. Appellants were tried without a jury with the SEC attorneys serving as prosecutors. At the conclusion of the trial, the district court entered judgments finding each appellant guilty of criminal contempt pursuant to 18 U.S.C. Sec. 401(3). On August 3, 1989, the court sentenced Mooney to six months, Carter to five months, and Litchfield to four months in prison.
 
 II.
 
 7
 The genesis of our holding in this case is the Supreme Court's decision in Young v. United States ex rel Vuitton et Fils S.A., 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). In 1978, Louis Vuitton, S.A., a French leather goods manufacturer, sued Sol Klayminc and others alleging that the defendants were manufacturing imitation Vuitton goods in violation of Vuitton's valid trademark. Klayminc and the others settled with Vuitton. In the settlement, Klayminc consented to the entry of a permanent injunction prohibiting him thereafter from manufacturing or selling fake Vuitton goods. In 1983, Vuitton and other manufacturers began an undercover "sting" operation in which Klayminc re-surfaced as a fake Vuitton products manufacturer. Vuitton's attorneys then requested that the district court appoint them as special counsel to prosecute a criminal contempt action for violation of the injunction. The court did so. Klayminc eventually was convicted by a jury of criminal contempt of court.
 
 
 8
 Klayminc appealed, arguing that the appointment of Vuitton's attorneys as special prosecutors violated his right to be prosecuted only by an impartial prosecutor. The Supreme Court agreed, holding under the authority of the Court's supervisory power that "counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a contempt action alleging a violation of that order. Id. at 2138. The basis for this holding was the Court's conclusion that an attorney who represented a party's interest in an underlying civil matter might not be able impartially to discharge his or her duty as a special prosecutor, which is the "dispassionate assessment of the propriety of criminal charges for affronts to the judiciary." Id. at 2136.[1]
 
 
 9
 Young, however, does not precisely control the present case. In Young, the special prosecutors' competing interest stemmed from their representation of Vuitton, a purely private entity. In the present case, the competing interest stemmed from the special prosecutors' concurrent representation of a government agency--the SEC. Nonetheless, Young guides our review of the district court's appointment of SEC attorneys to serve as special prosecutors. Specifically, we look to the lesson of Young, which is that courts should not appoint special prosecutors who have an extraneous interest in the case that may create "the appearance of impropriety." Young, 107 S.Ct. at 2137 (emphasis in original).
 
 
 10
 When the district court appointed the SEC to serve as special prosecutor, the underlying civil action against Litchfield and others had not been concluded. Thus, while the SEC was locked in an on-going civil struggle with Litchfield, the court gave the SEC the power also to pursue criminal charges against Litchfield and others. In Young, the Court explained that a pending civil action in which the special prosecutor had an interest
 
 
 11
 theoretically could have created temptation to use the criminal investigation to gather information of use in those suits, and could have served as bargaining leverage in obtaining pleas in the criminal prosecution. In short, as will generally be the case, the appointment of counsel for an interested party to bring the contempt prosecution in this case at a minimum created opportunities for conflict to arise, and created at least the appearance of impropriety.
 
 
 12
 Young, 107 S.Ct. at 2137 (emphasis in original).
 
 
 13
 Beyond the mere appearance of impropriety, in the present case there is evidence that the SEC has avidly and not disinterestedly pursued the convictions of appellants. In their brief to this Court, the SEC asserted as fact that "Litchfield told Dawson [a Nevada attorney] about the receiver's plan to sell the Orex/Chemex assets, and that Litchfield knew involuntary bankruptcy petitions were going to be filed." The SEC supports this statement with a specific citation to attorney Dawson's testimony at the criminal contempt trial. Reference to the cited testimony, however, reveals that when he was asked about his communications with Litchfield, Dawson refused to answer, claiming the attorney-client privilege. The district court allowed Dawson's claim of privilege. Contrary to the SEC's assertion, therefore, there simply was no testimony about the nature of the communications between Dawson and Litchfield. The SEC also claimed that "Litchfield persuaded ... Mooney ... to act for him in pressing for filing of bankruptcy petitions for Orex and Chemex." The SEC does not support this claim with a reference to trial testimony. Our review of the record indicates that there is no evidentiary support for this statement. Although these misrepresentations alone are not the cornerstones of appellants' convictions, such exaggerations raise serious doubt about the SEC's ability in this case to perform disinterestedly the duties of a special prosecutor.
 
 
 14
 The Ninth Circuit addressed the same situation involving a government agency in FTC v. American National Cellular, 868 F.2d 315 (9th Cir.1989). In this case, the Federal Trade Commission had been appointed to serve as special prosecutor to prosecute violations of orders entered in an underlying civil case that had been filed by the FTC. Although the Ninth Circuit concluded, based on Amer. Nat'l Cellular's specific facts, that the FTC appointment was permissible, the Court recognized that:
 
 
 15
 [c]asting government attorneys into adversarial roles in civil litigation results in vigorous advocacy for their client, the United States Government. Such vigor may cloud the attorneys' ability to distinguish between contempt prosecutions that further their purported primary objective--compliance with the court's order--and those that are driven by a primary motive to further the goals of the underlying litigation. For example, government attorneys may be tempted to pursue a nonmeritorious contempt prosecution because the prosecution would allow them to obtain documentary access to information useful in the underlying civil litigation. They may also be tempted to abandon, press, or compromise a prosecution wholly apart from its merits to leverage settlement in the underlying litigation. If their perspective is colored by involvement with the underlying civil action, then they more closely resemble the "interested parties" in [Young ] than impartial U.S. Attorneys.
 
 
 16
 Id. at 319.
 
 
 17
 The Ninth Circuit identified two factors that were relevant in finding appointment of a potentially interested government agency attorney permissible in that case. First, the court considered the involvement of the U.S. attorney in the prosecution, because "[t]he prospect of interested decisionmaking and of the appearance of impropriety is substantially lessened where the U.S. Attorney retains control of the prosecution in which the agency attorneys participate." Id. at 320. In the present case, the U.S. attorney did not retain control of the prosecution. Other than being listed on the SEC's brief to this Court, it appears that the U.S. Attorney was not involved in any way with the prosecution of appellants.
 
 
 18
 Second, the Ninth Circuit held that "the extent of the particular agency attorneys' involvement in the underlying civil litigation obviously is relevant in assessing the propriety of their participation as special prosecutors." Id. at 320. In Amer. Nat'l Cellular the attorneys for the FTC in the civil suit were not involved in the criminal contempt prosecution. The SEC attorneys who prosecuted the instant criminal contempt proceedings were deeply involved as the SEC attorneys in the underlying civil action from the signing of the civil complaint against Litchfield through representing the SEC at the civil contempt hearings. The U.S. attorney's lack of control over this prosecution and the SEC attorneys' extensive involvement in the underlying civil action indicate that the district court committed prejudicial error in appointing the SEC to serve as special prosecutor for the criminal contempt proceeding.[2]
 
 III.
 
 19
 The Supreme Court succinctly summarized in Young the reason courts must not appoint potentially interested attorneys to serve as special prosecutors:
 
 
 20
 Between the private life of the citizen and the public glare of criminal accusation stands the prosecutor. That state official has the power to employ the full machinery of the state in scrutinizing any given individual. Even if a defendant is ultimately acquitted, forced immersion in criminal investigation and adjudication is a wrenching disruption of everyday life. For this reason, we must have assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of justice.
 
 
 21
 Young, 107 S.Ct. at 2141. The SEC attorneys' previous involvement in the underlying civil case created a potential for conflict and an appearance of impropriety. This overt and substantial interest in the case and the misstatements in the SEC attorneys' brief undermine our confidence in these prosecutions.
 
 
 22
 We conclude that the appointment of the SEC attorneys as special prosecutors was plain error. We act sua sponte in finding this plain error under Fed.R.Crim.P. Rule 52(b) which provides that "Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 
 
 23
 Accordingly, we reverse appellants' contempt convictions.
 
 
 24
 REVERSED.
 
 
 
 [1]
 We have previously held that the appointment of a private party's attorney to serve as a special prosecutor in a criminal contempt action that stems from violation of an injunction entered on behalf of the private party violates the due process rights of the criminal contempt defendant. See Brotherhood of Locomotive Firemen and Enginemen v. United States, 411 F.2d 312, 319 (5th Cir.1969)
 
 
 [2]
 Our reference to the Ninth Circuit's two-factor test should not be construed as an adoption of that test by this Court. Instead, establishment of a Fifth Circuit rule should wait for a case in which this issue is not raised sua sponte. It is enough in this case that the prejudice forbidden by Young occurred