968 F.2d 1222
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
and
Federal Deposit Insurance Corporation, Claimant-Appellee,
v.
Leif D. SODERLING, Defendant-Appellant.
Paul B. Andrew, C.P.M., Receiver.
UNITED STATES of America; Federal Deposit Insurance
Corporation, Plaintiffs-Appellees,
v.
Jay S. SODERLING, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leif SODERLING, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jay S. SODERLING, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jay S. SODERLING, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jay S. SODERLING, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leif D. SODERLING, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leif SODERLING, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jay S. SODERLING, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leif D. SODERLING; Jay S. Soderling, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leif SODERLING; Jay S. SODERLING, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leif D. SODERLING; Jay S. Soderling, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leif D. SODERLING; Jay S. Soderling, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leif SODERLING, Defendant-Appellant.
 Nos. 88-1216, 88-1217, 89-10645, 89-10657, 89-10661,
89-10016, 90-10452, 90-10097, 90-10033, 90-10096,
90-10451, 90-10452, 91-10410 and 91-10411.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 8, 1991.*
Decided June 30, 1992.
 
 Appeal from the United States District Court for the Northern District of California; Nos. CR-87-0143-RFP, CR-87-143-RFP, CR-87-0279-RFP, CR-89-0279-RFP, CR-87-0143-02, CR-87-0143-RFP, CR-87-0143-01-RFP, CR-89-0279-02-RFP, CR-87-00143-RFP, CR-89-00279-RFP, CR-89-00279-RFP and CR-87-00143-RFP. Robert F. Peckham, District Judge, Presiding.
 Appeal from the United States District Court for the Northern District of California; No. CR-87-0143-01-EFL, Robert F. Peckham, District Judge, Presiding.
 N.D.Cal.
 AFFIRMED.
 Before: FLETCHER, WIGGINS and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Jay and Leif Soderling appeal the district court's two restitution orders, its finding that two trusts operated by the Soderlings were shams, its finding that the Soderlings committed criminal contempt, its revocation of the Soderlings' probations, and a number of other rulings.
 
 
 3
 * The Soderlings' first set of claims relates to the restitution order entered after their convictions for misapplying funds and overvaluing property and the restitution order entered after their convictions for criminal contempt. We will address those restitution orders in a subsequent disposition. The only restitution-related issue we need address now is whether, assuming the restitution orders are invalid and the Soderlings owe no restitution, the Soderlings' contempt convictions for violating the TRO are likewise invalid because the TRO was issued to facilitate collection of restitution.
 
 
 4
 It is well established "that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." GTE Sylvania, Inc. v. Consumers Union, 445 U.S. 375, 386 (1980); see also Pasadena City Bd. of Educ. v. Spangler, 427 U.S. 424, 439 (1976); Walker v. City of Birmingham, 388 U.S. 307, 314 (1967). In this case the district court had both personal jurisdiction over the Soderlings and subject matter jurisdiction over the controversy. "And this is not a case where the injunction was transparently invalid or had only a frivolous pretense to validity." Walker, 388 U.S. at 315. Thus, it is no defense to the Soderlings' contempt convictions that we may modify, reverse or vacate the district court's restitution orders.
 
 II
 
 5
 The Soderlings' second set of claims relates to the district court's finding that the Soderling family trusts were shams. This finding underlay the court's determination that the Soderlings were guilty of criminal contempt and its revocation of the Soderlings' probation. The court reasoned that if the trusts were shams, the "trust" assets were actually in the possession and control of the Soderlings. These trust assets also were subject to the TRO. Thus, the spending spree in which the Soderlings engaged using trust assets violated the TRO and made them subject to criminal contempt and probation revocation.
 
 
 6
 We review the district court's factual findings regarding the trusts under a clearly erroneous standard; we review the district court's interpretation of law de novo. United States v. McConney, 728 F.2d 1195, 1200-01 (9th Cir.1984). In evaluating whether the trusts were shams, the district court properly applied existing California law, Robinson v. United States, 632 F.2d 822, 825 n. 4 (9th Cir.1980), which required proof by a preponderance of the evidence. Liodas v. Sahadi, 19 Cal.3d 278, 292 (1977). The court's factual finding that the trusts were fraudulently created was supported by the requisite quantum of evidence and therefore was not clearly erroneous. Cf. TWM Homes, Inc. v. Atherwood Realty & Inv. Co., 214 Cal.App.2d 826, 845-50 (1963). There was sufficient evidence for the court to find that the Soderlings were aware the government was investigating them before they formed the trusts in question, that the trusts were operated to benefit the Soderlings more than the trust beneficiaries, and that the Soderlings retained a high degree of control over trust assets.[1]
 
 
 7
 The Soderlings argue that they received inadequate notice (1) that the trust assets were expected to be used to pay restitution, and (2) that the issue of whether the trusts were shams would be determined at their hearing for contempt and probation revocation. These claims are without merit. The validity of the trusts and the use of proceeds from the trusts were at issue from the beginning, and the Soderlings had ample notice the trust issue would be resolved at their hearing. See, e.g., United States Closing Trial Memorandum at 3; Defendant's Probation Revocation Brief at 14-17; Temporary Restraining Order of 9/23/88; 6/01/87 RT at 45, 51.[2]
 
 III
 
 8
 The Soderlings' third set of claims relates to their contempt convictions. Their first argument--that the contempt was improperly pled--was not raised below, and is therefore waived. See United States v. Castro, 887 F.2d 988, 996 (9th Cir.1989); United States v. Cloud, 872 F.2d 846, 853-54 n. 7 (9th Cir.1989).
 
 
 9
 A. We review the district court's finding of contempt only to determine whether a trier of fact could rationally find guilt beyond a reasonable doubt. FTC v. American Nat'l Cellular, 868 F.2d 315, 320-21 (9th Cir.1989). This standard is easily met. The TRO was clear and unambiguous; it forbade the very type of conduct in which the Soderlings engaged. The court's finding that the Soderlings violated the TRO with contumacious intent is amply supported by the record. The Soderlings' "defense" of reliance on advice of counsel to rebut a finding of intent is meritless; reliance on advice of counsel does not negate intent when a defendant violates a court order as clear as the one here. United States v. Armstrong, 781 F.2d 700, 706 (9th Cir.1986). Additionally, to find a defendant in contempt, a court need not find that the defendant obstructed justice beyond violating an order of the court, see 18 U.S.C. § 401(3); thus, the Soderlings' argument that, aside from violating the TRO, they did not obstruct justice is beside the point.
 
 
 10
 B. The Soderlings also claim they were entitled to a jury trial for contempt because the sentence they received exceeded six months' imprisonment and a $500 fine. See Frank v. United States, 395 U.S. 147, 149-50 (1969). They confuse the collateral consequences of their contumacious acts with their sentence for contempt. They were sentenced to a maximum of six months' imprisonment for contempt; this keeps the charge as one for "petty contempt" as to which the Soderlings have no right to a jury. United States v. Rylander, 714 F.2d 996, 1005-06 (9th Cir.1983).[3] That the contempt conviction was used to revoke the Soderlings' probation does not mean that the sentence they received at their probation revocation is added to their contempt sentence for purposes of 18 U.S.C. § 401. Nor was the restitution a "fine" for purposes of 18 U.S.C. § 401; it was intended to restore the status quo, not to punish the Soderlings. American Nat'l Cellular, 868 F.2d at 322; Black's Law Dictionary 1180 (5th ed. 1979).
 
 IV
 
 11
 The Soderlings' fourth set of claims focuses on the district court's revocation of their probation as a result of their contempt conviction. We review the court's decision to revoke probation for fundamental unfairness or an abuse of discretion, United States v. Simmons, 812 F.2d 561, 565 (9th Cir.1987), and find none. See United States v. Lara, 472 F.2d 128, 129 (9th Cir.1972). The Soderlings violated probation by breaking federal law, and the conduct constituting that violation justifies the court's decision to revoke probation.
 
 
 12
 A. The Soderlings claim that they had inadequate notice of their specific probation violations and that the petitions for probation revocation were impermissibly vague. They are wrong on both counts. The petitions for probation revocation informed the Soderlings that the government was seeking to revoke their probation for violating the court's TRO and for squandering assets to be used to pay restitution. These were the precise bases for revoking the Soderlings' probation; notice was sufficient and clear. See United States v. Tham, 884 F.2d 1262, 1265 (9th Cir.1989).[4]
 
 
 13
 B. The Soderlings also argue that the district court erred in ordering that their sentences upon probation revocation to run consecutively rather than concurrently. They rely primarily on the district court's Order Correcting Judgment (Sept. 25, 1987), which stated that the unsuspended portions of the Soderlings' incarceration were to run consecutively and their probations were to run concurrently, but which was silent as to the unsuspended portions of the Soderlings' incarceration. However, the court's Judgment and Commitment Order (June 29, 1987) clearly stated that both the suspended and unsuspended portions were to run consecutively, and nothing in the September 25 order purports to alter this.
 
 
 14
 More importantly, even assuming the September 25 order's silence regarding the unsuspended portion creates a presumption that the unsuspended portions are to run concurrently, see United States v. Wingender, 711 F.2d 869, 870 (9th Cir.1983), this presumption is not conclusive. In this case, the district court, which is in the best position to interpret its sentencing orders, concluded that those orders made the Soderlings' unsuspended sentences consecutive. Order Revoking Probation at 2 (Dec. 21, 1989); Order Correcting Judgment at 1 (Jan. 22, 1990). We defer to the district court's interpretation of its own orders and find that the court did not err in ordering that the Soderlings' sentences run concurrently. See United States v. O'Brien, 789 F.2d 1344, 1347-48 (9th Cir.1986); United States v. Dickie, 752 F.2d 1398, 1400 (9th Cir.1985).
 
 V
 
 15
 Finally, we address the Soderlings' remaining claims. The court's denial of the Soderlings' motions for continuance and severance was not an abuse of discretion. See United States v. Donaghe, 924 F.2d 940, 943 (9th Cir.1991) (continuances); United States v. Kaplan, 895 F.2d 618, 621 (9th Cir.1990) (severances). The district court's admission of testimony from the Soderlings' attorneys to prove that they had notice of the TRO was not erroneous. United States v. Freeman, 519 F.2d 67, 68 (9th Cir.1975).
 
 
 16
 The Soderlings attempt to raise several new issues in their reply brief.[5] We do not consider issues raised for the first time in an appellant's reply brief. Thompson v. Commissioner, 631 F.2d 642, 649 (9th Cir.1980). Moreover, these new issues were not raised below and were thus waived. Castro, 887 F.2d at 996; Cloud, 872 F.2d at 853-54 n. 7.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 See Declaration of Betty Ann Smith, dated April 17, 1989, and accompanying exhibits; Declaration of Denis Hayes, dated September 23, 1988, and accompanying exhibits; Declaration of Denis Hayes, dated February 12, 1988, and accompanying exhibits; 9/14/89 RT (testimony of Helene Dano) at 8-23 to 8-24; 9/14/89 RT (testimony of Evelyn Soderling) at 8-59 to 8-62; 9/14/89 RT (testimony of Leif Soderling) at 8-143 to 8-150; 7/25/89 RT (testimony of Robin Guzman) at 3-55 to 3-64; 7/25/89 RT (testimony of Lyman Andrew) at 3-172 to 3-185; 7/19/89 RT (testimony of David Wilson) at 2-24 to 2-31; 7/19/89 RT (testimony of Ruth Chambers) at 2-40 to 2-46; 7/19/89 RT (testimony of Michael Rippey) at 2-88 to 2-102 & 2-107 to 2-113; 7/18/89 RT (testimony of Brent Stromgren) at 1-89 to 1-97; 7/18/89 RT (testimony of Thomas Falcey) at 1-108 to 1-128
 
 
 [2]
 Because the trusts were shams, the Soderlings--contrary to their assertions--could use trust assets to pay restitution. Nicolas v. Grover, 186 Cal.App.3d 858, 861 (1986). The Soderlings' claims that they had a right to a jury trial on the trust issues and that a statute of limitations barred the government from challenging the trusts were not raised below and are therefore waived. See United States v. Castro, 887 F.2d 988, 996 (9th Cir.1989); United States v. Cloud, 872 F.2d 846, 853-54 n. 7 (9th Cir.1989)
 
 
 [3]
 In his sentencing order, Judge Peckham sentenced each Soderling to 5 years probation without specifying the prison sentence that would be imposed on the defendants if they violated probation. However, the information charging the Soderlings with contempt charged them with a "violation of 18 U.S.C. § 401 (a petty offense)." Thus, Judge Peckham is bound to limit any prison sentence upon violation of probation to the six month maximum for petty offenses and, given this limitation, the Soderlings had no right to a jury trial. See United States v. May, 622 F.2d 1000, 1005 (9th Cir.1980)
 
 
 [4]
 Any argument the Soderlings make based on United States v. Green, 735 F.2d 1203, 1206-07 (9th Cir.1984), that probation could not be revoked for failure to pay restitution when the restitution amount had not been "finally determined," was waived by their failure to raise it below. In any event, one of the reasons that the district court revoked the Soderlings' probation was for violating the TRO. This did not require a final determination of the amount of restitution owed; it merely required a finding that the Soderlings violated the TRO's asset disposition provisions with contumacious intent. Likewise, the Soderlings' argument that the court could not revoke their probation until the restitution period had ended is erroneous. The probation violation that occurred when the Soderlings violated the TRO would not be affected by whether or not they ultimately paid the full amount of restitution owed. To revoke the Soderlings' probation for violating the TRO, the court did not have to wait until the restitution period had ended
 
 
 [5]
 The new issues involve the Soderlings' claims (1) of alleged Brady v. Maryland, 373 U.S. 83 (1963), violations, see Jay Soderling's Reply Brief at 19-23; (2) of alleged Fed.R.Crim.P. 11 violations in the district court's acceptance of their plea bargains, see Leif Soderling's Reply Brief at 13-14; and (3) that the district court, in finding the Soderlings guilty of contempt, went beyond the scope of the charges contained in the Contempt Information, see id. at 15-16