**UNITED STATES of America**

**v.**

**NYNEX CORPORATION.**

**Crim. No. 90–0238 (HHG).**

United States District Court, District of Columbia.

Dec. 13, 1991.

Michael P. Harmonis, Kenneth W. Gaul, Carl Willner, Antitrust Div. U.S. Dept. of Justice, Washington, D.C., for U.S.

Scott W. Muller, Linda Chatman Thomsen, Davis Polk & Wardwell, Washington, D.C., Guy Miller Struve, Seth Richard Lesser, Davis Polk & Wardwell, New York City, for NYNEX Corp.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

Defendant, NYNEX Corporation, has been indicted for criminal contempt under 18 U.S.C. § 401(3). The charge is that NYNEX willfully violated section II(D)(1) of the decree entered by this Court in *United States v. Western Electric Co.*, 552 F.Supp. 131 (D.D.C.1982), by providing information services through Telco Research from April 11, 1986 until February 1987. The government alleges that Telco Research, acquired by NYNEX on April 11, 1986, continued to provide such services to MCI Communications during this ten-month period pursuant to several specific agreements.

Defendant has filed six pretrial motions, the government has filed oppositions and one motion of its own, the Court has received replies, and it has heard oral argument on the government's motion and three of the defendant's motions.

## I

NYNEX has moved for a bill of particulars asserting that the government has alleged only vaguely two of the three elements it must prove: (1) willfulness, and (2) the actions by NYNEX that allegedly violate the decree. Because the defendant has been adequately informed of the charge against it, the motion will be denied.

■ By an informal exchange of letters, the government gave defendant a list of twenty employees whose conduct and intent it may impute to the defendant. The letter also gave a description of what is included in the term "computer facility" in the indictment and what is meant by the words "pursuant to" the three agreements specified in the indictment. The indictment itself also informs NYNEX that it is charged with providing an information service through its Telco Research facility to MCI during a specific ten-month period in violation of the decree.

■ A bill of particulars may be granted or denied at the discretion of the trial court. *See United States v. Butler*, 822 F.2d 1191, 1194 (D.C.Cir.1987). A bill of particulars is appropriate in order adequately to inform the defendant of the charges against him, to enable it to prepare a defense, and to avoid unfair surprise at trial. *See United States v. Madeoy*, 652 F.Supp. 371, 374 (D.D.C.1987) (*citing United States v. Kendall*, 665 F.2d 126 (7th Cir.1981)); *United States v. Pollack*, 534 F.2d 964, 970 (D.C.Cir.1976).

The charge in the instant case does not involve a complex, longstanding conspiracy; it is a relatively simple charge of violating the decree over a defined period of time. The details requested by NYNEX go basically to matters of evidence and to the government's legal theory, and they therefore need not be set out by way of a bill of particulars. The motion will be denied.

## II

Defendant has moved to dismiss the indictment based on the failure of the government to present exculpatory evidence to the grand jury. In connection with this claim, NYNEX charges that the government failed to bring before the grand jury documents which NYNEX had submitted to the government with the request that they be so presented.[1]

■ NYNEX's motion amounts to an argument that, unless the investigation by the grand jury proceeds as a mini-trial at which the defendant is allowed to present its defense, the indictment is flawed and must be dismissed. This argument flies directly in the face of the Supreme Court's teaching in *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956), that the defendant has no right to "a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury." *See also, Bank of Nova Scotia v. United States*, 487 U.S. 250, 263, 108 S.Ct. 2369, 2378, 101 L.Ed.2d 228 (1988). Indeed, it is the general rule in the federal jurisdiction that the prosecutor has no obligation to present exculpatory evidence to the grand jury. *See, e.g., United States v. Poindexter*, 725 F.Supp. 13, 39 (D.D.C.1989) (*citing United States v. Ismaili*, 828 F.2d 153, 165 n. 13 (3d Cir.1987)).[2] There is no merit to the motion and it will be denied.

---

**1.** These documents were a thirty-one page memorandum in the form of a letter to the grand jury containing NYNEX's version of the facts and the law; appendices containing 182 pieces of evidence in the form of various court documents and testimony; and a set of jury instructions incorporating NYNEX's theory of the facts and the law of criminal contempt. NYNEX has also requested discovery of the grand jury proceedings, if the Court should deny its motion to dismiss the indictment on this basis. That discovery request is denied.

**2.** In the jurisdictions which do not follow the majority rule, grand jury secrecy would have to be almost routinely invaded if courts were serious about implementing their general views.

### III

NYNEX has moved for the production of materials under various legal theories that the government accurately characterizes as overbroad and burdensome even if this were a civil case. Memorandum of the United States in Opposition at 1.

For example, under Rule 16(a)(1)(C), Fed. R.Crim.P., and pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), NYNEX made eighty-five separate requests with a total of 293 parts and subparts, and its legal memoranda in support of this motion alone number seventy pages. In considering the specific demands, it is also relevant that, according to the government's uncontradicted statements, it has:

> provided NYNEX with over 170,000 pages of documents that may be material to the preparation of its defense, including: all documents gathered by the government during the pre-indictment investigation from any source, including third parties; all 18 transcript volumes of depositions of officers and employees of NYNEX companies taken by the government under the MFJ's visitorial provisions during the investigation; all 31 transcript volumes of depositions of NYNEX officers and employees taken during discovery in *Rafferty v. NYNEX Corp.*, Civ. Action No. 87–1521 ...; and over 6,500 pages of written statements of NYNEX representatives obtained outside the investigation leading to the indictment. NYNEX has also obtained several thousand additional documents in response to a Freedom of Information Act request filed by NYNEX's counsel, encompassing the subject matter of most of NYNEX's current demands for MFJ material.

Memorandum of the United States in Opposition at 2. The bulk alone requested by NYNEX betrays a serious misunderstanding of the criminal process.

The Court will now briefly discuss specific issues raised by the motion.

■ 1. NYNEX requests access to the grand jury testimony of all those of its current or former employees who may have testified before that body. It is the government's position that it would presently [3] make available such transcripts only if NYNEX affirmed that the particular individuals are able legally to bind that corporation. The Court concludes that this position is well taken for a number of reasons.

In the first place, the Rule itself provides that the testimony of an individual is discoverable only if that individual was "so situated ... as to have been able legally to bind the defendant...." Rule 16(a)(1)(A). Moreover, since NYNEX explicitly claims that the statements of the employees in question cannot be imputed to it, it would be inconsistent to require the government to make the statements available on the theory that these individuals stood in the shoes of NYNEX. Finally, to the extent that there is precedent on this issue, it supports the government's position. *See, e.g., United States v. Twentieth Century–Fox Film Corp.*, 700 F.Supp. 1242, 1244 (S.D.N.Y.1988), *aff'd in part*, 882 F.2d 656 (2d Cir.1989); *see also*, American Bar Association, *Handbook on Antitrust Grand Jury Investigations* 74 (2d ed. 1988); American Bar Association, *Criminal Antitrust Litigation Manual* 185 (1983).[4]

2. There is also a dispute between the parties concerning the discovery of non-grand jury statements, both written and oral, of NYNEX employees. The govern-

---

**3.** Should any of these individuals be called as witnesses by the government, their statements would, of course, have to be made available to the defendant under the Jencks Act.

**4.** NYNEX relies to the contrary on *United States v. Yunis*, 867 F.2d 617, 621 (D.C.Cir.1989), which dealt with the discovery of classified materials, not with the issue under consideration here, and *United States v. Caldwell*, 543 F.2d 1333, 1353 (D.C.Cir.1974), which held that a letter written by a defendant in a murder-robbery case should have been made available to him prior to its use by government counsel at trial because fundamental fairness requires granting the accused "equal access to his own words." Even by the most charitable stretch of the holdings in these cases, they fail to support NYNEX's position.

ment has now agreed that such statements by current employees may be regarded as "statements made by the defendant" and are therefore discoverable. Accordingly, they apparently have in fact been turned over to NYNEX. Memorandum of the United States in Opposition at 16.

As for out-of-court statements of former employees, the government resists their discovery on the basis that they cannot be used as admissions under Fed. R.Evid. 801(d)(2)(D), while NYNEX argues for its entitlement to such statements. The issue is a close one, and there are no reasoned precedents directly on point, but the Court has resolved the matter in favor of the position taken by NYNEX. *United States v. Bestway Disposal Corp.*, 681 F.Supp. 1027, 1030 (W.D.N.Y.1988); *United States v. Fischbach & Moore, Inc.*, 576 F.Supp. 1384, 1390 (W.D.Pa.1983). The Court does not consider that Rule 801(d) establishes an exception to the discovery rights created by Rule 16. Accordingly, such written or recorded statements in the government's possession shall be turned over by the government to NYNEX.[5] As to oral statements made in response to government interrogation, the government shall identify which, if any, it intends to introduce as evidence at trial, and produce them within thirty days of this Memorandum.

3. Initially, NYNEX also requested, under Rule 16(a)(1)(A) and (C), oral and written statements by its employees made to third parties which were recorded in documents possessed by the government. Upon consideration of the authority cited by the government, including *United*

*States v. Pollack*, 534 F.2d 964, 976 (D.C.Cir.1976), NYNEX has withdrawn this request.[6]

4. NYNEX seeks any notes or memoranda made by Michael Altschul, Esq., of the Department of Justice regarding telephone conversations with Thomas Hearity, a NYNEX attorney, in 1986 and January 1987. NYNEX argues that any such notes are "written or recorded statements made by the defendant" and are discoverable under the first full clause of Rule 16(a)(1)(A), while the government contends they are "oral statements."

Such memorialization of an oral conversation cannot be considered "written or recorded" statements of the defendant within the meaning of the first full clause of Rule 16(a)(1)(A). They are instead oral statements; otherwise, the "oral statements" clause of Rule 16(a)(1)(A) would be superfluous because every oral statement that was memorialized would become a "written or recorded statement."[7] *See United States v. McClure*, 734 F.2d 484, 493 (10th Cir.1984) (statements to undercover officers which were subsequently memorialized in written form by the officers were "oral statements" under Rule 16).

Oral statements are discoverable if "the government intends to offer [such statements] in evidence at the trial" and if made "in response to interrogation by any person then known to the defendant to be a government agent...." Rule 16(a)(1)(A). NYNEX concedes that its attorney called Mr. Altschul. Voluntarily initiated telephone conversations with the government do not constitute interrogation. *United*

---

**5.** No present right to discovery exists with respect to such materials to the extent that the individuals are prospective witnesses. Their statements will, of course, be discoverable pursuant to the Jencks Act, 18 U.S.C. § 3500. The Court expects that the government will not delay until the last possible moment allowed by that statute for production, for the trial should not be unnecessarily interrupted while counsel for the defendant reads the material in question prior to cross examination of the particular witnesses.

**6.** It is unclear whether NYNEX has only withdrawn its request made pursuant to Rule

16(a)(1)(A), and not Rule 16(a)(1)(C), but to the extent any oral statements are contained in "internal government documents made by the attorney for the government ... in connection with the investigation or prosecution of the case" they are not discoverable under Rule 16(a)(1)(C) because of the exclusion in Rule 16(a)(2).

**7.** The authority NYNEX cites for the proposition that such statements are "written or recorded," rather than "oral," generally concern an earlier, different version of Rule 16 which had no comparable provision for oral statements.

*States v. Von Stoll,* 726 F.2d 584, 587–88 (9th Cir.1984).

■ 5. NYNEX raises numerous additional requests for information under Rule 16(a)(1)(C) and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[8]

■ a. Regarding the scope of any government searches under *Brady,* NYNEX requests the government to provide any material in the possession of the Federal Communications Commission (FCC), as well as the Department of Justice. Reply Memorandum of NYNEX Corporation at 13 n. *. Both parties argue the prosecution must provide materials possessed by the prosecution or by any "other federal agency allied with the prosecution...." *United States v. Poindexter,* 727 F.Supp. 1470, 1477 (D.D.C.1989). The FCC, an independent regulatory agency, is not allied with the Justice Department in prosecuting this matter, and accordingly FCC files need not be searched.

■ b. Under both Rule 16(a)(1)(C) and *Brady,* NYNEX requests voluminous information relating to the original consent decree in *United States v. AT & T.* Such information is available to NYNEX and anyone else in the extensive public files on that case; it has little or nothing to do with the current issues; and NYNEX's motion regarding this information is denied as unnecessary and burdensome. NYNEX's specific requests as to Dr. Peter Huber are also denied because the information sought is too removed from the issues in this case to be deemed material.

■ c. NYNEX also requests *all* written materials concerning one Scott Rafferty, a critic of NYNEX, notwithstanding the requirement in Rule 16(a)(1)(C) that documents of that character be provided only if they are "material." The government has stated its refusal to provide "documents concerning communications with Mr. Rafferty unrelated to the activity charged in the indictment." The government remains aware of its obligations under the Jencks Act should Mr. Rafferty be a witness. It is not further obligated to provide additional, immaterial information regarding Mr. Rafferty.

■ d. The parties contest whether internal government materials, otherwise protected as attorney work-product, are subject to discovery under *Brady.* The government has been willing to provide exculpatory "facts," even if contained in internal government documents, but resists providing material reflecting only government attorneys' "opinions." NYNEX seeks any material, including opinions, that might reflect on the merits of NYNEX's interpretation of the consent decree or the MCI arrangement at issue here, which in turn might indicate whether the decree was unambiguous or whether NYNEX's violation could be established beyond a reasonable doubt.

Cases on this question, albeit without much discussion, suggest that internal materials possibly constituting work product may not automatically be exempt from *Brady* requirements. *See Castleberry v. Crisp,* 414 F.Supp. 945, 953 (N.D.Okla. 1976); *United States v. Goldman,* 439 F.Supp. 337, 350 (S.D.N.Y.1977); *United States v. Dekle,* 768 F.2d 1257, 1263 (11th Cir.1985). However, none of the cases require that attorney opinions on legal issues must be made available to the other side.

In any event, any internal materials need only be disclosed if "material to guilt or punishment." *Brady,* 373 U.S. at 87, 83 S.Ct. at 1197. A particular government attorney's opinion as to the strength or

---

**8.** *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963), requires the government to disclose to the defense any "evidence [which] is material either to guilt or to punishment...."

As a preliminary matter, NYNEX expresses concern that the government is only turning over information that the government deems material and responsive to NYNEX's requests, and suggests that the government might be reading the requirements of Rule 16(a)(1)(C) more strictly than does NYNEX. This objection is so generalized and lacking in supporting evidence as not to warrant a ruling. However, this Court reiterates that the government should interpret the "material to the preparation of the defendant's defense" language in Rule 16(a)(1)(C) broadly to ensure fairness to the defendant.

weakness of a NYNEX argument, or as to the clarity or meaning of the decree, would not preclude a contrary argument during litigation by the government or bind a court's ruling. Accordingly, the information NYNEX seeks would not affect the guilt or innocence of NYNEX or the level of punishment, and disclosure is therefore not mandated.[9] The government should, and apparently already has, disclosed exculpatory facts, even if contained in internal documents otherwise protected by the work product privilege.

NYNEX's related request for information on the opinion of *any* individual regarding the decree—apparently to show that the decree is unclear—is even more removed, and those opinions are similarly non-exculpatory and are not discoverable.

e. NYNEX seeks any *Brady* material encompassed in individuals' statements—either through depositions, grand jury testimony, or otherwise—which the government possesses. NYNEX acknowledges that it is not entitled to *Brady* information which it already possesses. The government argues that NYNEX in effect has such information because the individuals are available for interviews with NYNEX, and the government therefore argues it is not required to turn over such information.

Despite its argument, the government is nonetheless willing to provide any exculpatory information contained in interviews or depositions of Telco employees which NYNEX does not otherwise have, or contained in interview notes of other individuals. Memorandum of the United States in Opposition at 38 n. 42 and 39.

The remaining dispute apparently centers on grand jury transcripts and depositions. It is questionable whether NYNEX really needs such information when it does in fact have ready access to the relevant individuals (including NYNEX's own employees) and when it already possesses voluminous information. The cases have held that exculpatory materials need not be disclosed as long as the witnesses are accessible to the defendant. *See, e.g., United States v. Hicks*, 848 F.2d 1, 3–4 (1st Cir. 1988) (government not required to turn over grand jury transcript where defense had access to or could subpoena witness); *United States v. Craig*, 573 F.2d 455, 492 (7th Cir.1977); *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir.1989).

However, the government is ordered under *Brady* to produce any exculpatory evidence contained in individuals' statements, which NYNEX does not already possess, either in documentary form or through its access to its own employees.

f. Regarding the timing of any government disclosure, the government has committed to turning over Jencks Act material ten days before trial, which is satisfactory. The government had promised to turn over all *Brady* material by August 31, 1990; regarding any additional *Brady* or other material which must be disclosed pursuant to this Memorandum, the government is ordered to do so within thirty days of this date.

## IV

NYNEX has moved for a jury trial, while the government has simultaneously moved for a bench trial. NYNEX argues that the $1,000,000 fine the government is seeking is so serious a penalty that NYNEX is constitutionally entitled to a jury trial under the Sixth Amendment. Argument on these motions and the two motions discussed in Sections V and VI of this Memorandum was heard on February 14, 1991.

**9.** *Cf. United States v. Williams*, 529 F.Supp. 1085, 1100 (E.D.N.Y.1981), *aff'd* 705 F.2d 603 (2d Cir.1983) (indictment should not be dismissed because of internal prosecution memoranda on weakness of the case; such memoranda indicating government employees' opinions do not preclude government from testing its evidence in court).

Both parties cite *United States v. American Cyanamid Co.*, 1975–2 Trade Cas. (CCH) ¶ 60,- 608, 1975 WL 987 (S.D.N.Y. Oct. 28, 1975), *modified*, 1975–2 Trade Cas. (CCH) ¶ 60,619, 1975 WL 992 (S.D.N.Y. Nov. 12, 1975), in support of their conflicting arguments. That case is inconclusive because it discusses legal opinions as possibly constituting *Brady* material, but then proceeds to discuss only the disclosure of exculpatory facts.

Individuals have a right to a jury trial for serious criminal offenses. *Blanton v. North Las Vegas,* 489 U.S. 538, 109 S.Ct. 1289, 1291, 103 L.Ed.2d 550 (1989). This right extends to criminal contempt proceedings. *Bloom v. Illinois,* 391 U.S. 194, 198–200, 88 S.Ct. 1477, 1480–81, 20 L.Ed.2d 522 (1968). Offenses carrying a potential sentence of over six months imprisonment are always deemed sufficiently serious to warrant a trial by jury. *Muniz v. Hoffman,* 422 U.S. 454, 477, 95 S.Ct. 2178, 2190, 45 L.Ed.2d 319 (1975).

The law is more ambiguous, however, regarding corporate defendants facing only fines, not imprisonment. The Supreme Court, noting that "imprisonment and fines are intrinsically different," has specifically left open the question of whether a right to a jury trial exists when a corporate defendant faces only a fine. *Id.* The *Muniz* Court, while not deciding whether a constitutional right was implicated, ruled that a $10,000 criminal contempt fine imposed on a labor union with 13,000 members was not "of such magnitude that the union was deprived of whatever right to jury trial it might have...." *Id.*

Assuming, without deciding, that corporations have a jury trial right at all where only a fine is imposed, the issue is whether the $1,000,000 fine the government has proposed against NYNEX is serious enough to implicate the Sixth Amendment.

As a practical matter, the answer must be no. Such a fine is simply not serious to a corporation of NYNEX's magnitude. A $1,000,000 fine would, for example, constitute one-tenth of one percent of NYNEX's average annual net income of over $1 billion.[10] Such a fine would barely scratch the surface of NYNEX's considerable financial resources.

As a legal matter, the Supreme Court in *Muniz* did not establish an absolute dollar figure as an indication of whether a fine is sufficiently serious. Instead, the Court

suggested that the dollar value of the fine must be weighed against the defendant's ability to pay in determining a penalty's severity. "[W]e cannot say that the fine of $10,000 imposed on [the union] in this case was a deprivation of such magnitude that a jury should have been interposed to guard against bias or mistake." *Id.* at 477, 95 S.Ct. at 2191. The Court rejected following the then-existing statutory definition of petty offenses as those crimes carrying a penalty of no more than a $500 fine,[11] stating that such statutes could not be accorded "talismanic significance." *Id.* The Court continued on to state "it is not tenable to argue that the possibility of a $501 fine would be considered a serious risk to a large corporation or labor union." *Id.* Similarly, it appears to this Court that it is not tenable that a fine of one-tenth of one percent of a corporate defendant's annual net income poses a serious risk to that corporation.

The two Circuits which have specifically addressed this issue have reached different conclusions. The Fourth Circuit has interpreted *Muniz* as requiring that the severity of a fine against a corporation be determined by its impact on the corporation, stating, "it appears that, when a corporation is the contemnor, *Muniz* requires that the right to a jury trial be gauged, somehow, according to the ratio of the fine imposed and the defendant's ability to pay." *United States v. Troxler Hosiery Co. Inc.,* 681 F.2d 934, 936 n. 2 (4th Cir. 1982). The court held that a $80,000 fine imposed on a company which the government's proof showed had a net worth of $540,000 was not a serious deprivation requiring a trial by jury. *Id.* at 937–38.

The Second Circuit has held, in contrast, that any fine over the admittedly "arbitrary" level of $100,000 is sufficiently serious to require a jury trial. *United States v. Twentieth Century Fox Film Corp.,* 882 F.2d 656, 664 (2d Cir.1989). The Second Circuit apparently set this absolute dollar

---

**10.** For 1987 through 1989, NYNEX reported net income totaling $3.4 billion. NYNEX's reported net income for the first quarter of 1990 was $291 million.

**11.** 18 U.S.C. § 1(3) (1969).

limit in part because of the difficulty in comparing a proposed fine to the defendant's resources. *Id.* That court still held, however, that for fines below the $100,000 threshold, "it will remain appropriate to consider whether the fine has such a significant financial impact upon a particular organization as to indicate that the punishment is for a serious offense, requiring a jury trial." *Id.* at 665. Thus, the Second Circuit's approach yields only a limited benefit to judicial economy because a court would still need to compare a fine to a firm's resources whenever the fine is less than $100,000.[12]

■ This Court concludes that it is the better reading of *Muniz* to weigh a fine against a firm's ability to pay in ascertaining whether a fine is so serious as to warrant a trial by jury. NYNEX further urges this Court to examine factors other than the amount of the proposed fine in determining the severity of the offense. NYNEX specifically points to 18 U.S.C. § 3571(c)(3) in which Congress established $500,000 as the maximum penalty that can ordinarily be assessed on corporations for felonies. According to NYNEX, it necessarily follows that a fine of twice that amount must be considered serious. The Supreme Court, however, explicitly rejected attaching conclusive weight to statutory penalties as indicators of the severity of an offense. *Muniz*, 422 U.S. at 477, 95 S.Ct.

at 2190 (no "talismanic significance" accorded statutory provision defining petty offenses).

■ NYNEX additionally cites the Antitrust Division's press release statement that NYNEX's alleged violation was "a very serious matter" plus the fact that the government proceeded by indictment as indicators that this offense must be deemed serious. If this Court is not required to attach conclusive weight to the legislative pronouncements of Congress in weighing an offense's severity, it need not be bound by the U.S. Government's boilerplate rhetoric[13] or chosen method of prosecution.

■ Because the fine proposed here is petty relative to NYNEX's significant resources, a jury trial is not constitutionally required.[14] NYNEX's motion is denied, and the government's motion for a bench trial is granted.

## V

■ NYNEX has moved to dismiss the indictment because the Antitrust Division has a disabling conflict.[15] NYNEX argues it is an impermissible conflict for the Antitrust Division, which has been extensively involved in the initial decree as well as subsequent interpretations and modifications of it, to now criminally prosecute an alleged violation of the decree.

12. Another concern is that the Second Circuit's approach benefits larger firms, which will face a maximum $100,000 fine without a jury trial no matter how small an impact that will have on their net worth, while smaller firms will risk such fines that may have a catastrophic impact on their finances.

There are additional, familiar problems with a court establishing an absolute dollar threshold, such as the presumed need to modify the threshold every few years according to inflation rates.

13. If government sentiment were a sufficient indicator, drunk driving, for example, which has been repeatedly decried by the government and the public as a devastating societal problem, would always be considered a "serious" offense warranting a trial by jury. Yet the Supreme Court concluded otherwise in *Blanton v. North Las Vegas,* 489 U.S. 538, 109 S.Ct. 1289, 1294, 103 L.Ed.2d 550 (1989) (first time DUI

offenders facing up to six months imprisonment or 48 hours of community service, in conjunction with a fine up to $1000, required attendance at an alcohol abuse education course, and loss of license for 90 days do not have constitutional right to a jury trial).

14. Even though not constitutionally required to do so, this Court could in its discretion grant a jury trial. This Court declines to do so because the case will in part involve complex issues that will more appropriately and efficiently be resolved by the bench.

15. NYNEX also moved in the alternative for additional discovery, but later stated that it would not press for discovery in light in statements made by the government at the February 14, 1991 hearing. See Transcript of Motions Hearing, February 14, 1991, at 26. In any event, additional discovery is not needed for this Court to make its ruling.

NYNEX relies heavily on *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). In *Young*, the trial court had appointed as special counsel to prosecute a criminal contempt matter one of the private attorneys in the underlying civil action. The Supreme Court concluded that such an appointment created the *"potential* for private interest to influence the discharge of public duty" in part because the criminal contempt prosecution might affect the prosecutor's financial interest in the underlying litigation. *Id.* at 805, 107 S.Ct. at 2136 (emphasis in original). The Supreme Court, exercising its supervisory authority over the lower courts, concluded the trial court's appointment was a fundamental error in the contempt proceeding.

*Young* is of course completely distinguishable from the instant case because it involved the troubling situation of an interested *private* party representing the public interest, and because there was the possibility of the prosecutor financially benefitting from his dual role; these concerns are not implicated where the Department of Justice is the prosecutor. NYNEX also relies, however, on two Circuit court cases interpreting *Young* and applying it to government prosecutors.

*FTC v. American National Cellular*, 868 F.2d 315, 320 (9th Cir.1989), permitted Federal Trade Commission (FTC) attorneys involved in a civil case to be appointed special prosecutors in a related criminal contempt proceeding. The Ninth Circuit, however, noted that two factors were relevant in analyzing the propriety of government attorneys serving as special prosecutors in criminal contempt cases: (1) whether the U.S. Attorney retained control over the criminal proceedings, which would decrease the appearance of interested decisionmaking; and (2) whether the specific agency attorneys involved in the civil case

were sufficiently uninvolved in the criminal contempt proceeding. *Id.*

The Second Circuit in *SEC v. Carter*, 907 F.2d 484 (1990), concluded it was prejudicial error for a trial court to appoint Securities & Exchange Commission (SEC) attorneys as special prosecutors in a criminal contempt matter where the SEC was the named plaintiff in the underlying civil case.

Significantly, in each of the three cases relied upon by NYNEX, the trial court appointed the special prosecutors, while in this matter the Department of Justice has initiated the prosecution in a routine exercise of its jurisdiction. It was in the context of affirming the lower courts' power to initiate a criminal contempt prosecution that the *Young* Court urged restraint in the exercise of that authority and required that any appointment of a special prosecutor avoid even the *"appearance* of impropriety." 481 U.S. at 806, 107 S.Ct. at 2137. This case does not involve the trial court's appointment power, and concerns about how courts should exercise their authority to appoint special prosecutors are therefore simply not a factor in this case. This Court, of course, has considerable control over the contempt proceedings regardless of how the prosecution is initiated.

The *Carter* and *American National Cellular* cases are not dispositive for yet another reason. Neither case involved the Justice Department, which is the federal government's primary criminal enforcement authority. It is one thing to restrict the prosecutorial ability of regulatory agencies which do not normally bring criminal contempt prosecutions, and another to restrict the Justice Department's authority.[16] As one example of the implications of such a restriction, a U.S. Attorney's Office, which is analogous to one division in the Justice Department, would presumably be barred from any criminal contempt matter

---

16. NYNEX cites to numerous statutes which require regulatory agencies, such as the SEC and FTC, to refer criminal matters involving regulated parties to the Department of Justice. Memorandum in Support of NYNEX Corporation's Motion at 16 n. *. There is of course no comparable statute for the Department of Justice because there is no other agency for it to

fall back upon for criminal prosecution. Those statutes show Congress' concern with regulatory agencies acting as prosecutors while implicitly acknowledging that the Justice Department is a more appropriate enforcement authority. That authority would be curtailed if NYNEX's argument were adopted.

stemming out of the many civil cases with which it is involved. *Young* and its progeny cannot be read to cause such serious interference with the Justice Department's authority, particularly in a case such as this where any alleged conflict is so speculative.[17]

The awkwardness of NYNEX's position is further reflected in its argument that only the Antitrust Division, rather than the entire Department, be disqualified, with a disinterested prosecutor such as the U.S. Attorney taking over the prosecution.[18] Disqualifying only one division would not seem to solve the problems NYNEX alleges about potential government abuse. If the Antitrust Division wanted to initiate a criminal contempt prosecution for improper reasons but was disqualified (and undeterred by ethical restrictions), that Division could simply request that another division do it. The U.S. Attorney's office, for example, NYNEX's own suggested alternative prosecutor, is of course part of the same department and headed by the same person as the Antitrust Division. On the other hand, if the entire Justice Department were disqualified, courts would have to start appointing a rash of private, special prosecutors to handle contempt motions. Either alternative is untenable. For these reasons, NYNEX's motion is denied.

## VI

NYNEX's sixth motion involves two requests. First, pursuant to Rule 16(a)(1)(C), NYNEX requests the identification and production of all evidence which the government intends to use in its case in chief at trial and specifically designations of those portions of depositions and grand jury transcripts the government intends to

offer. Second, NYNEX requests identification of any similar acts under Fed. R.Evid. Rule 404(b) which the government intends to prove at trial.

The government has agreed to provide the requested information prior to trial but the parties disagree as to the appropriate timetable. Given the length of time that has already elapsed and the hope that prompt disclosure may avoid problems at trial, the following scheduled is ordered.[19]

The government is ordered to produce the evidence that it intends to use in its case in chief, including designations of depositions and grand jury transcripts, as well as other documents and tangible items, within thirty days of this Memorandum.[20] Pursuant to Rule 16(b)(1)(A), the government requests reciprocal discovery from the defendant. The defendant is ordered to produce any documents and other tangible items it intends to introduce as evidence in chief at trial as well as any cross-designations and objections to the government's designations within twenty-five days after the government's disclosure. The government will provide NYNEX with any cross-designations and objections to NYNEX's designations within fifteen days thereafter.

The government is ordered to identify all Rule 404(b) evidence within thirty days of this date. It is recognized that, as trial approaches or even commences, either party may need to identify and produce additional information, and it is ordered that each party shall do so as promptly as possible.

---

17. NYNEX is correct that the *Young* Court was concerned about potential, not just existing, conflicts of interests. It is nevertheless worth noting just how speculative NYNEX's arguments are regarding possible Department of Justice abuse of its prosecutorial authority to the detriment of NYNEX in light of that Department's consistent support of the Regional Companies on matters involving the decree.

18. This is in contrast to the *Carter* and *American National Cellular* cases, otherwise so heavily relied upon by NYNEX, in which entire agencies were potentially disqualified.

19. The government should have no trouble complying since it was near its "final cut" in deciding which evidence to use at trial well over one year ago. Letter from Michael P. Harmonis to Scott W. Muller, July 17, 1990.

20. If the government designates part of an individual's grand jury testimony for use at trial, it should provide NYNEX with the entire transcript to ensure completeness.