UNITED STATES of America,
Plaintiff–Appellant,

v.

Dean S. VLAHOS and U.S. Sales Corporation, doing business as Data Resources Systems, Defendants–Appellees.

In the Matter of United States
of America, Petitioner.

Nos. 93–2841, 93–3105.

United States Court of Appeals,
Seventh Circuit.

Argued April 21, 1994.

Decided Aug. 23, 1994.

Michael J. Shepard, Asst. U.S. Atty., Marsha A. McClellan (argued), Office of the U.S. Atty., Crim. Div., Chicago, IL, Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S.

Dean S. Vlahos, pro se.

Darren B. Watts, Altheimer & Gray, Chicago, IL, for U.S. Sales Corp.

Edward M. Genson, Jeffrey B. Steinback, Genson, Steinback, Gillespie & Martin, Chicago, IL, Richard H. Parsons, Peoria, IL, for Ill. Attys. for Crim. Justice, amicus curiae.

Brian Barnett Duff, U.S. Dist. Court, Chicago, IL, Frank J. McGarr (argued), Kathleen H. Klaus, Pope, Cahill & Devine, Chicago, IL, for Brian Barnett Duff.

Before CUMMINGS, MANION and ROVNER, Circuit Judges.

CUMMINGS, Circuit Judge.

In September 1992 the United States filed a petition for a rule to show cause why defendants Dean Vlahos and U.S. Sales Corporation should not be held to answer criminal contempt charges for alleged violations of a permanent injunction entered by Judge Brian Barnett Duff in February 1992. The government's petition alleged 11 separate violations of 18 U.S.C. § 401(3), which gives a federal court power to punish as contempt "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." The government's petition was granted on October 30, 1992.

On June 24, 1993, Judge Duff rejected the Department of Justice's request that its attorney, Peter Ainsworth, be allowed to serve as prosecutor for the case and also disqualified Assistant United States Attorney Marsha McClellan. The following day, Judge Duff entered an order disqualifying "the United States Attorney's Office" from prosecuting the criminal contempt charges against Dean Vlahos and U.S. Sales Corporation and appointing a private attorney, Darren Watts of the Chicago firm of Altheimer and Gray, to prosecute the charges. The United States now appeals. We vacate and remand.

*History of the Controversy*

In 1991 the Federal Trade Commission ("FTC") brought an action against Dean Vlahos and U.S. Sales Corporation ("defendants") to secure an injunction and restitution for unfair and deceptive practices. In February 1992, the district court granted the FTC's motion for summary judgment and entered a permanent injunction against the

defendants.[1] The permanent injunction prohibited defendants from engaging in certain enumerated unfair and deceptive acts and practices.

In response to alleged violations of the injunction by defendants, the Department of Justice filed on September 29, 1992, a petition for a rule to show cause why defendants should not be charged with criminal contempt. On October 30, 1992, Judge Milton Shadur—replacing Judge Duff while he was on sabbatical leave—entered an order granting the rule to show cause. The Department of Justice attorney Malcom Logan was given the responsibility of prosecuting the criminal contempt action.

On May 14, 1993, defendant Vlahos, acting *pro se,* filed a motion seeking to disqualify attorney Logan, arguing that there was "an appearance that Mr. Logan [was] acting as the puppet of the FTC attorneys" who had brought the underlying civil action. Despite the Department of Justice's objections, Judge Duff disqualified Logan. The United States did not appeal this determination—and it is not at issue here—but rather attempted to proceed with alternate counsel.

On June 15, 1993, the Department of Justice requested that Peter Ainsworth, a trial attorney with its Office of Consumer Litigation, be allowed to substitute for Logan. On June 24, Ainsworth appeared before Judge Duff with Marsha McClellan, an Assistant United States Attorney for the Northern District of Illinois, who was to assume primary responsibility for the prosecution of the criminal contempt charges. The district court denied the Department of Justice's motion to substitute Mr. Ainsworth as counsel, but briefly accepted Ms. McClellan's appearance and her request that Mr. Ainsworth be allowed to assist in the prosecution of the contempt charges. The district court cautioned that:

My personal experience with the United States Attorney's office on the prosecution of contempt cases has been miserable. They haven't done a good job on any matter that's ever come in front of me in this respect.

\* \* \* \* \* \*

Handle it right or I'll disqualify you all and appoint my own [attorney].

(Tr. June 24, 1993 at 4). Defendant Vlahos objected to Ms. McClellan's appearance, claiming that she had indicated the FTC was her client. In response, Ms. McClellan offered the following account of her conversation with defendant Vlahos:

I [had] a conversation with Mr. Vlahos in which he inquired about conversations between myself and the employees of the FTC.

I advised him that those conversations were privileged ... [for] a number of reasons. They are work product, they are government deliberative process, and I also said, as Mr. Vlahos represents, that the FTC is a client agency.

I am representing the United States in this case.... That does not change the fact that the FTC is an agency of the United States.

(Tr. June 24, 1993 at 8–9). Judge Duff immediately disqualified Ms. McClellan, stating:

The FTC in the case in front of me is not your client. The people of the United States are your client. You were supposed to be a prosecutor, you don't seem to understand that even though I made it totally clear.

(Tr. June 24, 1993 at 9). Judge Duff then rejected the Department of Justice's renewed request that Mr. Ainsworth be allowed to serve as prosecutor.

---

1. The FTC's action was brought in response to radio and television commercials produced by the defendants, advertising, among other things, methods to purchase government repossessed and confiscated cars. In granting the FTC's motion for summary judgment, the district court held that the advertisements at issue were unfair and deceptive. The court entered a permanent injunction and ordered defendants to pay $9 million to defrauded consumers. *Federal Trade Commission v. U.S. Sales Corp.,* 785 F.Supp. 737 (N.D.Ill.1992). Dean Vlahos' appeal from this decision is currently before this Court. *Federal Trade Commission v. Vlahos,* No. 93–2322 (filed May 24, 1993).

Judge Duff issued a minute order the following day, holding that the "U.S. Attorney's office is disqualified from further handling of this matter." He reasoned that his request "that the appropriate governmental prosecuting authorities handle this matter ha[d] been constructively denied," and that he was forced to disqualify the United States Attorney's Office "[b]ecause of the failure of two consecutive government prosecutors to recognize th[e] conflict" of interest "between their representation of the FTC and the representation of the people of the United States." Judge Duff then appointed Darren Watts, a private attorney, to prosecute the matter.

On July 1, 1993, the government moved the district court to reconsider its disqualification of the United States Attorney's Office and of Ms. McClellan. The court refused to reconsider its disqualification decision, stating, among other things, that the United States Attorney's Office was "ill-prepared to carry the burden of prosecut[ing]" the contempt charges and did not "have the knowledge that it needs to go forward with th[e] case." (Tr. July 1, 1993, at 5, 10).[2]

On July 23, 1993, the United States filed a timely notice of appeal requesting review of the district court's orders disqualifying all government attorneys and appointing a private attorney to prosecute the criminal contempt charges. The appeal was assigned appellate docket number 93–2841.

On August 24, 1993, the district court denied the government's motion to stay the prosecution pending appeal and directed that the trial would proceed the next day unless this Court stayed the matter. That same day this Court granted the government's emergency motion to stay the contempt proceeding.

In September 1993, the government filed a companion petition for writ of mandamus which was assigned appellate docket number 93–3105. The petition has been consolidated with the original appeal.

As an initial matter, this Court must determine whether there is jurisdiction over the government's appeal.

## Jurisdiction

■■■ Ordinarily, a party may not take an appeal under 28 U.S.C. § 1291 until there has been a decision by the district court that ends the litigation on the merits. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351. An order disqualifying the United States Attorney's Office from prosecuting a criminal contempt action and appointing an independent prosecutor clearly does not fall within that category. A narrow exception to this rule, however, permits immediate appeal of a "collateral order" when such an order conclusively determines a disputed question, resolves an important issue completely separate from the merits of the case, and would be effectively unreviewable if appeal were delayed until after a final judgment on the merits. *Id.* at 468, 98 S.Ct. at 2458. District court orders granting or denying motions to disqualify counsel in civil cases are not immediately appealable because such orders may be effectively appealed after final judgment. *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 377, 101 S.Ct. 669, 675, 66 L.Ed.2d 571. An order disqualifying government counsel in a criminal case, however, is immediately appealable since such an order conclusively determines whether the challenged counsel will be allowed to prosecute, an issue completely independent of the merits of the action, and since—unlike civil cases—if such an order "is not immediately appealable, it is effectively unreviewable." *In Re Grand Jury Subpoena of Rochon,* 873 F.2d 170, 173 (7th Cir.1989) (emphasis omitted); accord *United States v. Caggiano,* 660 F.2d 184, 189–190 (6th Cir. 1982), certiorari denied *sub nom. Winfield v. United States,* 454 U.S. 1149, 102 S.Ct. 1015,

---

**2.** At a hearing on August 17, 1993, Judge Duff asserted that "on every single [occasion] that the United States Attorney's office [in the Northern District of Illinois] has dealt with a matter of contempt of court, they have not known what they were doing ..." and that the United States Attorney's Office "[did not] know how to handle [its] responsibilities when the Court asks for a criminal contempt proceeding." (Tr. Aug. 17, 1993 at 7, 12–13).

71 L.Ed.2d 303; cf. *United States v. (Under Seal),* 757 F.2d 600, 602 n. 1 (4th Cir.1985).[3]

■ Moreover, even if the collateral order doctrine were inapplicable, the government would be entitled to mandamus relief, since—as is discussed in greater length *infra*—the district court exceeded the boundaries of its lawful role by prohibiting the designated representatives of the Executive Branch from prosecuting this criminal contempt action. It is settled that mandamus is appropriate in such a setting. *Matter of Sandahl,* 980 F.2d 1118, 1120–1121 (7th Cir.1992); cf. *In Re United States,* 985 F.2d 510, 511 (11th Cir. 1993), certiorari denied *sub nom. Falcon v. United States,* —— U.S. ——, 114 S.Ct. 545, 126 L.Ed.2d 447 (1993); *United States v. Winner,* 641 F.2d 825, 830 (10th Cir.1981); *In Re Attorney General of the United States,* 596 F.2d 58, 64 (2d Cir.1979), certiorari denied *sub nom. Socialist Workers v. Attorney General of the United States,* 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141.

### Merits

■ A district court has the power to initiate a criminal prosecution against a party that has defied a lawful court order. *Young v. United States* ex rel. *Vuitton et Fils S.A.,* 481 U.S. 787, 796, 107 S.Ct. 2124, 2131–32, 95 L.Ed.2d 740. Included in this power is the authority to appoint a private attorney to prosecute the contempt. *Id.* This power is rooted in necessity, for "[i]f the Judiciary were completely dependent on the Executive Branch to redress direct affronts to its authority, it would be powerless to protect itself if that Branch declined prosecution." *Id.* at 801, 107 S.Ct. at 2134. But while a court has the authority to appoint a private prosecutor, "its exercise of that authority must be restrained by the principle that only the least possible power adequate to the end proposed should be used in contempt cases." *Id.* (citations and internal quotations omitted). Thus courts "ordinarily should first request the appropriate prosecuting authority to prose-

cute contempt actions, and should appoint a private prosecutor only if that request is denied." *Id.*

■ Here, however, a private attorney was appointed to prosecute the contempt charges against Dean Vlahos and U.S. Sales Corporation even though the appropriate prosecuting authority, the United States Attorney's Office, had manifestly not declined to prosecute the charges. Indeed, it had brought the alleged contempt to the district court's attention and had displayed every willingness to pursue the charges. Judge Duff nevertheless appointed a private prosecutor, claiming that the United States Attorney's Office had "constructively" refused to prosecute because "two consecutive government prosecutors [had failed] to recognize" the conflict of interest "between their representation of the FTC [in the underlying civil suit] and their representation of the people of the United States [in the contempt proceedings]." Judge Duff subsequently suggested that he had appointed a private prosecutor because the United States Attorney's Office was "ill-prepared" and did not "have the knowledge" to prosecute the contempt charges. (Tr. July 1, 1993, at 5, 10).

We do not agree that the United States Attorney's Office constructively refused to prosecute the criminal contempt charges. Nothing in the record indicates that the United States Attorney's Office was ill-prepared or lacked sufficient ability to prosecute the case before the district court. Furthermore, the attorney assigned by the United States Attorney's Office to prosecute the contempt charges after the disqualification of Mr. Logan understood the nature of her role and was not under a conflict of interest. Ms. McClellan's statements make clear that she understood that she represented the United States and not the FTC. See Tr. June 24, 1993 at 8–9. More importantly, nothing in the record suggests that Ms. McClellan suffered any conflict of interest.[4] Nor is there

---

3. Orders denying a motion to disqualify a defense attorney in a criminal trial are, on the other hand, not immediately appealable as collateral orders. *United States v. White,* 743 F.2d 488 (7th Cir.1984).

4. There are cases which suggest that in certain instances it is improper to appoint an attorney for an independent agency to prosecute a criminal contempt action where that attorney was intimately involved in the underlying civil action. See, *e.g., United States ex rel. Securities & Ex-*

any indication that Mr. Ainsworth suffered under a conflict. Since the United States assigned an attorney aware of her duties and free of any conflicts of interest, the district court had no reason to disqualify her or her office.[5]

The United States Attorney's Office was ready and able to prosecute the criminal contempt charges against Vlahos and U.S. Sales Corporation. The district court therefore erred when it appointed a private attorney to prosecute those charges. The order of the district court disqualifying Ms. McClellan and the United States Attorney's Office is vacated. On remand the case shall be reassigned by the district court to a different judge pursuant to Circuit Rule 36.

Vacated and remanded.

MANION, Circuit Judge, concurring.

It is not often that we review a case in which two coordinate branches of government clash in such a dramatic fashion. I concur in all respects and add a few thoughts about the intriguing collision between the executive and judicial branches which Judge Duff's disqualification of the government's attorneys prompted.

In *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95

L.Ed.2d 740 (1987), the Supreme Court recognized a judge's authority to appoint a private attorney to prosecute criminal contempt. The Court reasoned that the unique nature of contempt as a crime against the judiciary permitted judicial prosecution. Justice Scalia, in a concurring opinion, disagreed that the judiciary has constitutional authority to prosecute contempt cases, arguing that authority resides exclusively in the executive branch under Article III, Section 2, clause 1 of the Constitution. As this case illustrates, *Young* may have caused some confusion about the executive's role in prosecuting contempt. In this appeal the district court relies on *Young* to argue that the executive has no authority to prosecute criminal contempt, absent an invitation from the judge: "Criminal contempts are not like other crimes against the United States; they are crimes against the judiciary's authority and therefore fall within the judiciary's and not the executive's power to prosecute." The district court has raised a compelling separation of powers question: if prosecution of criminal contempt is essentially a judicial function, what right has the uninvited (or even the unfairly disqualified) executive to intrude?

The answer is that the executive branch has every right to intrude. *Young* does contain language that could give rise to argu-

---

*change Commission v. Carter*, 907 F.2d 484, 488 (5th Cir.1990); *Federal Trade Commission v. American National Cellular*, 868 F.2d 315, 319–320 (9th Cir.1989). However, not only is there no indication in the record that Ms. McClellan played any role whatsoever in the underlying civil action here, the logic of these cases cannot be extended to require the disqualification of a United States Attorney, as opposed to an attorney for an independent agency:

> It is one thing to restrict the prosecutorial ability of regulatory agencies which do not normally bring criminal contempt prosecutions, and another to restrict the Justice Department's authority. As one example of the implications of such a restriction, a U.S. Attorney's Office ... would presumably be barred from any criminal contempt matter stemming out of the many civil cases with which it is involved. *Young* and its progeny [such as the cases cited *supra*] cannot be read to cause such serious interference with the Justice Department's authority.

. . . . .

*United States v. NYNEX Corp.*, 781 F.Supp. 19, 29–30 (D.D.C.1991) (footnote omitted).

5. Even if the district court had properly determined that Ms. McClellan had a conflict of interest, the weight of authority indicates that it should have ordered that another Assistant United States Attorney handle the case rather than disqualify the entire Executive Branch. When an individual government attorney is disqualified from participation in a particular case, the " 'vicarious disqualification of a government department is not necessary or wise.' " *Caggiano*, 660 F.2d at 189–190 (quoting ABA Committee on Professional Ethics, Formal Op. 342, 62 A.B.A.J. 57 (1976)). Perhaps if the United States Attorney's Office repeatedly refused to assign an attorney who did not have a conflict of interest, this would constitute a constructive refusal to prosecute sufficient to allow the district court to appoint a private prosecutor. Cf. *United States v. Providence Journal Co.*, 485 U.S. 693, 696–697 n. 4, 108 S.Ct. 1502, 1505 n. 4, 99 L.Ed.2d 785. Since that is not what occurred here, there is no need to address this possibility.

ments for or against a court's right to take dominion over prosecution for criminal contempt. The court today affirms the executive's authority to prosecute contempt even when faced with a judge who, for various reasons, sought to control the prosecutorial function. To the extent *Young* may have caused any question this court has answered it; the executive branch has constitutional authority to prosecute contempt. This result is consistent with the Supreme Court's mandate in *Young*, that "courts should first request the appropriate prosecuting attorney to prosecute contempt actions, and should appoint a private prosecutor only if the request is denied." 481 U.S. at 801, 107 S.Ct. at 2134. The Court was not merely making a suggestion about the most prudent course a judge should follow when faced with criminal contempt: that the judge should first offer the case to a federal prosecutor because he is best equipped, in training and experience, to prosecute any case. This case demonstrates that the prosecutor should be given the right of first refusal to prosecute contempt, because prosecution of contempt—even though it is a crime against the judiciary—is a responsibility which the Constitution gives to the executive branch.