95 F.3d 1154
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dean S. VLAHOS, Defendant-Appellant.
 No. 95-1484.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 8, 1996.*
Decided Aug. 9, 1996.
 
 Before POSNER, Chief Judge, and ROVNER, and EVANS, Circuit Judges.
 
 ORDER
 
 1
 After a bench trial in December 1994, the district court found Dean Vlahos and his corporation, U.S. Sales, guilty of criminal contempt of court, 18 U.S.C. § 401(3), for willfully violating a permanent injunction forbidding either defendant from engaging in certain types of advertising without first obtaining a performance bond. Vlahos appeals, contending that the contempt petition failed to state an offense; that the evidence against him was insufficient; that the performance bond provision of the injunction is unlawful; and that his constitutional rights were violated because he was not appointed counsel for his defense. Finding his claims to be meritless, we affirm the judgment of the district court.
 
 I.
 
 2
 Our story begins in 1991, when the Federal Trade Commission (FTC) sued Vlahos and U.S. Sales, of which Vlahos is president and sole shareholder, for engaging in unfair and deceptive trade practices in violation of 15 U.S.C. § 45. In his highly profitable scheme, Vlahos attracted customers by running effusive radio and television commercials promising that callers to the U.S. Sales 900 toll number could learn how to obtain a credit card regardless of credit history or where to purchase confiscated automobiles in good condition at auction for as little as $100. After listening to a lengthy recorded announcement at a cost of $2-3 per minute, callers were referred to a toll-free 800 number where a live operator would peddle "lifetime memberships" for $99.95 that entitled the member to receive further public auction information. In just over a year, several hundred thousand people responded to the ads and many bought memberships. The promises, however, proved too good to be true, prompting the FTC action.
 
 
 3
 The district court, Judge Duff, granted summary judgment to the FTC and ordered Vlahos and U.S. Sales to pay joint and several restitution of over $9 million. FTC v. U.S. Sales Corp., 785 F.Supp. 737 (N.D.Ill.1992). Vlahos appealed the judgment, but we dismissed for failure to prosecute after granting Vlahos eleven extensions to file his opening brief. On February 28, 1992, Judge Duff entered a permanent injunction that in relevant part enjoined defendants from "engaging or participating, directly or in concert with others, in the media advertising of any automobile auction or credit card information service unless they first obtain a performance bond in the principal sum of Seventy-Five Thousand Dollars ($75,000)." Vlahos's later motion to vacate the performance bond requirement was denied, and we affirmed in an unpublished order.
 
 
 4
 Less than four months after the injunction was entered, Vlahos nevertheless authorized the publication of a Norfolk, Virginia, newspaper advertisement relating to car auctions, as follows: "GOVERNMENT AUCTIONS--U.S. Sales. Confiscated cars. Operator 290. 1-800-866-2863." The ad ran daily from June 24 through July 1, 1992. The FTC heard about it, and Vlahos soon found himself and his company charged with criminal contempt.
 
 
 5
 The present contempt action was originally assigned to Judge Duff, but before trial commenced we ordered it reassigned pursuant to Circuit Rule 36. United States v. Vlahos, 33 F.3d 758 (7th Cir.1994). A bench trial was conducted before Judge Marovich by way of stipulated testimony, admission of exhibits, and argument. In his stipulated testimony, Vlahos explained that he discussed recruiting additional members to U.S. Sales with one of his members, William Spates. Spates, using the alias Stacey Felder (his girlfriend's name), placed the Norfolk ad in the hope of earning commissions for new memberships. Upon the newspaper's request for verification, Vlahos authorized publication of the ad on behalf of U.S. Sales. Vlahos claimed he "didn't intend that the advertisement ... was going to be for a car auction information service," but instead he "understood it to be for the real estate foreclosure information service" he was attempting to launch to help U.S. Sales recover from bankruptcy. (Trial Tr. at 43.) He admitted, however, that he "may have given some sales pitches for car auction information services in response to the advertisement." (Id. at 43-44.)
 
 
 6
 The district court concluded that placing the newspaper ads constituted media advertising of automobile auction information services within the meaning of the injunction, that no performance bond had been posted, and that Vlahos authorized the ad and took advantage of responses to it. (Id. at 58-62.) Judge Marovich also held that Vlahos acted willfully. He found Vlahos guilty of two counts of criminal contempt, based on two of the eight ad placements, and sentenced him to three months imprisonment. The court later rejected Vlahos's various post-trial motions, United States v. Vlahos, 884 F.Supp. 261 (N.D.Ill.1995), and this appeal ensued.[1]
 
 II.
 
 7
 Vlahos leads off with a claim that the contempt petition failed to state an offense. In United States v. James, 923 F.2d 1261, 1265 (7th Cir.1991), this court set forth the elements of a sufficient indictment: "(1) It states all the elements of the offense charged; (2) It informs the defendant of the nature of the charge so that he may prepare a defense; and (3) It enables the defendant to plead the judgment as a bar to later prosecution for the same offense." The elements of a criminal contempt offense under section 401(3) are "a lawful and reasonably specific order of the court and a willful violation of that order." Doe v. Maywood Housing Auth., 71 F.3d 1294, 1297 (7th Cir.1995). Vlahos strains to draw a distinction between the injunction's prohibition of advertising "automobile auction information services" and the charging petition's allegation that he had advertised "the sale of automobile auction services." That the petition paraphrased the injunction was not misleading. The nature and elements of the contempt charge were obvious, and the petition provided ample detail as to the circumstances of the alleged violation. Vlahos does not and could not reasonably contend that he was confused.
 
 
 8
 In a related argument, Vlahos avers that the evidence was insufficient to support his conviction. Again, Vlahos attempts to manipulate the plain meaning of words to his benefit, suggesting either that the scope of the injunction is vague or that the stipulated facts failed to show a violation. Neither contention merits discussion: as Judge Marovich found, the scope of the injunction is clear, and the Norfolk newspaper ad fell squarely within its ambit.
 
 
 9
 Vlahos cleverly contends that his actions were not willful because he reasonably believed the injunction does not prohibit selling memberships by telemarketing, as opposed to "media advertising," and that all he did was give a sales pitch over the phone. However, Vlahos admittedly used newspaper advertising to drum up prospects for automobile auction service membership sales. The ad did not have to say "information services" in order to be "for" information services. Although Vlahos acted through an intermediary and via an advertisement more subtle than the pitches in his original operation, it is evident that what he deliberately and contumaciously accomplished was functionally identical to the scam that the FTC sought to shut down in the first place. The district court correctly penetrated this smokescreen.
 
 
 10
 Vlahos's convoluted argument that the performance bond requirement of the injunction is a prior restraint of speech in violation of the First Amendment is meritless. Misleading and deceptive advertising is unquestionably subject to prohibition, Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York, 447 U.S. 557, 566 (1980), and equitable relief may be framed broadly to prevent its recurrence. See FTC v. Amy Travel Service, Inc., 875 F.2d 564, 571-72 (7th Cir.), cert. denied, 493 U.S. 954 (1989); FTC v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1026 (7th Cir.1988); Encyclopaedia Britannica, Inc. v. FTC, 605 F.2d 964, 971 (7th Cir.1979), cert. denied, 445 U.S. 934 (1980). The injunction here was properly tailored to its purpose, and Vlahos's contentions that it was otherwise void do not merit discussion.
 
 
 11
 Finally, Vlahos's claim that he was "denied" appointed counsel in violation of the Sixth Amendment or, alternatively, that his waiver of counsel was invalid, must fail. Vlahos initially refused to file the financial affidavit required by the Criminal Justice Act to establish that he was indeed unable to retain counsel. When he did submit a financial affidavit, he modified his request to one for standby counsel, which was granted. Although Vlahos suggests he failed to follow through on his request for counsel because he was intimidated by Judge Duff's troubling intimation that the financial information might be used to prosecute him for fraud, he never indicated any dissatisfaction with his arrangement after the case was reassigned to Judge Marovich. In any event, his claim of intimidation is mooted by the fact that he submitted the information anyway. A careful review of the record leaves no doubt that Vlahos voluntarily, knowingly, and intelligently elected to proceed pro se with the assistance of standby counsel.
 
 
 12
 Vlahos's miscellaneous remaining arguments are likewise meritless. The judgment of the district court is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 The district court stayed execution of the sentence pending the outcome of this appeal